JOHN SCHOBERT, Appellant, *vs.* THE PITTSBURG COAL AND MINING COMPANY *et al.* Appellees.

*Opinion filed June 21, 1912.*

REAL PROPERTY—*effect of grant of underlying coal with license to remove it.* One who sells the coal underlying his land may, by express restriction, forbid the mining of coal from adjacent lands through the tunnels made in the mining of the coal under the grantor's land, but unless such restriction is expressly made the grantor cannot enjoin the grantee or his assigns from using such tunnels in removing coal from adjacent lands.

APPEAL from the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding.

TURNER & HOLDER, for appellant.

SCHAEFER & KRUGER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

This action is a bill in chancery filed by the appellant against the appellees praying for an injunction and an accounting. The facts out of which the litigation arose are as follows: Prior to August 30, 1887, Martin Ammel owned in fee simple the north-west quarter of the south-east quarter and the east half of the north-east quarter of the south-west quarter of section 16, township 1, north, range 8, west, St. Clair county. On said 30th day of August, 1887, Ammel and wife conveyed by warranty deed to Philip M. Gundlach the coal "in, under and throughout" the land above described, except one and a quarter acres previously conveyed to Antoine Fournie, "with license irrevocable to mine and remove said coal," except the coal under a part of said land (described by metes and bounds) upon which the residence and other buildings of the grantor were located. On the 29th of July, 1903, Gundlach conveyed to Prosper Fournie a strip of coal underlying the

south-west corner of the premises above described. Said strip was described by metes and bounds, was 435 feet long north and south by 81.8 feet wide east and west, and comprised a little less than one acre. On the 11th day of March, 1905, Ammel, by warranty deed and without any reservation, conveyed the north-west quarter of the south-east quarter and the east half of the north-east quarter of the south-west quarter of section 16, except the Antoine Fournie acre, to the appellant. The Antoine Fournie acre lay along the north line of the last above described tract. Prosper Fournie owns land adjoining appellant's lands on the south and west. On Fournie's land adjoining appellant's on the west the Pittsburg Coal and Mining Company had its coal shaft, through which it is taking coal underlying appellant's land, and also Fournie's coal under the land lying south of appellant's. In order to get the coal from the Fournie land lying south of appellant's to the shaft, it is taken through a space from which the coal has been removed in the strip conveyed by Gundlach to Fournie.

All these facts are set out in the bill, and it is alleged that at the time and prior to the conveyance of the coal by Ammel to Gundlach, with license to remove the same, it was understood and agreed in writing between the parties that nothing was included in the conveyance except the coal in place, with license to remove it, and that when it was removed the space formerly occupied by the coal, and the rooms, entries and tunnels left by its removal, should revert to the grantor and his assigns. The bill further alleges that prior to and at the time of the conveyance of the premises to appellant the Pittsburg Coal and Mining Company was operating a shaft for hauling coal from the bottom to the surface of the land owned by Prosper Fournie lying west and south of appellant's land, and that said Fournie purchased the acre of coal under appellant's land from Gundlach with the design and intention of using the space made by removing coal therefrom for the purpose

of taking coal from under the land of Fournie which lies south of appellant's land, to the surface, through the shaft of the Pittsburg Coal and Mining Company located on the land of Fournie immediately west of appellant's land. The bill charges an unlawful combination and confederation between Fournie and the Pittsburg Coal and Mining Company, and in pursuance of which an illegal contract was made and entered into between them, by which Fournie has received a large sum of money from the Pittsburg Coal and Mining Company for the right of using the space, tunnel or entry under the said acre for conveying coal under appellant's land from Fournie's land lying south of his, to the shaft; that in pursuance of the said agreement the Pittsburg Coal and Mining Company is now using, and will continue to use, said space in said acre for said purpose, to the prejudice of appellant, unless enjoined therefrom. The bill charged that the appellees were unlawfully using the premises of appellant and that Fournie was deriving large profits therefrom, and if permitted to continue such use appellant will be forever deprived of his own just rents, gains and profits and be irreparably damaged. There is no averment in the bill that Fournie has removed all the coal bought by him from Gundlach, but the charge is that he and the other appellee are using a space cut through said coal to transport coal from Fournie's lands south of appellant's to the shaft of the mine. The prayer is for an injunction, and that said Fournie be required to account to appellant for what he has received from the Pittsburg Coal and Mining Company for the use of the space, entries and rooms under said acre. A demurrer to the bill was sustained, and appellant electing to stand by his bill, a decree was entered dismissing the same for want of equity, and an appeal has been prosecuted direct to this court.

Appellant contends that the deed from Ammel to Gundlach for the coal was a conveyance of the coal with the right to remove it, and when the coal was removed all

rights of Gundlach ceased and the space from which the coal was removed became and was the property of the grantor and his assigns.  We think the sufficiency of this bill must be determined from a consideration of the legal effect of a conveyance of coal under the surface of land, without any reference to the allegations that at and prior to the time of the conveyance from Ammel to Gundlach it was understood and agreed in writing between them that nothing passed by the grant except the coal and the right to remove it, and that when removed the rooms, entries and tunnels should revert to the grantor and his assigns. If there was such a writing it is not set out in the bill nor made an exhibit to it, nor is it alleged that it was contemporaneous with the execution of the deed, but the allegation is that the writing existed prior to and at the time the deed was made.  Neither is there any allegation that such a writing was recorded, or that Fournie had notice of its existence when he bought the acre of coal from Gundlach.

We regard the principle announced in *Consolidated Coal Co.* v. *Schmisseur*, 135 Ill. 371, as in point.  In that case Mrs. Schmisseur sold and conveyed to the Schuremans the coal underlying 159 and a fraction acres owned by her, and for the purpose of enabling the grantees to sink shafts and mine and remove the coal she leased to them and their legal representatives for the term of thirty-five years, "unless the said coal shall be sooner exhausted, in which event said lease and the right to mine said coal shall cease and expire," certain portions of the land described, containing in all seven acres.  The grantees sank a shaft, opened a mine and mined coal for some years and then sold out to the Consolidated Coal Company.  That company acquired from other parties the coal under one hundred acres of land adjoining the land of Mrs. Schmisseur, and proceeded to mine and remove the coal from that land through entries and openings made in the land of Mrs. Schmisseur by removing coal therefrom and hoisting the

coal so removed from other lands through the shaft on the land leased from Mrs. Schmissuer, who thereupon filed a bill to enjoin transporting coal from other land across or over her land which was not mined from her land. The position of Mrs. Schmisseur was stated by the court in the following language: "It is insisted, and with much force, that a court of equity should interfere, by way of injunction, to prevent appellant from using its entries and the pit and shaft upon the leased premises for the purpose of removing and delivering coal mined upon its adjacent lands, for the reason, as is alleged, that it is in violation of the contract and a breach of its conditions." The court said Mrs. Schmisseur, if she had seen proper to do so, might have restricted the use of her land by express stipulation and required the lessees to agree not to use it for any purpose she deemed detrimental to her interests, but not having done so, a court of equity would not interfere to prevent the use that was being made of her land by the Consolidated Coal Company until the expiration of the term of the lease or until all the coal had been mined from underneath her land.

The same question involved in this case was before the Supreme Court of Ohio in *Moore* v. *Indian Camp Coal Co.* 80 N. E. Rep. 6. It was there said: "The empty space is therefore not merely property which may be used as an incident to the removal of the mineral included in the grant, but, as suggested by the author cited above, (MacSwinney on Mines,) he may use the space created by removal of mineral within the grant as a way for the carriage of minerals from his adjoining lands, or, if he prefers to do so, he may cut a passage through the minerals and use it for the carriage of minerals from his other lands. (MacSwinney on Mines, 67, 68.) In creating a separate mining right the grantor may, of course, protect himself by restrictions, but in the absence of such restrictions we think the rulings

in [citing numerous cases, including *Consolidated Coal Co.* v. *Schmisseur,*] are sound law and should be followed."

The same question was before the Supreme Court of Pennsylvania in *Lillibridge* v. *Lackawanna Coal Co.* 143 Pa. St. 293; 24 Am. St. Rep. 544; 13 L. R. A. 627. In that case a bill was filed to enjoin defendant from removing coal belonging to it on a tract of land adjoining the plaintiffs' through a tunnel made by the defendant through coal underlying plaintiffs' land which had been purchased from plaintiffs and conveyed by them to defendant. The contention of the plaintiffs was stated by the court in this language: "The argument is, that it was not within the intention of the parties that such a right should be granted or exercised, and that, whether it was or not, the plaintiffs have such a property in the chamber or space left by the mining operations that it cannot be used without their permission." The opinion is an elaborate one, reviewing many authorities, and denies plaintiffs' right to the writ. Among other things it was said: "If, then, the coal in place is a pure corporeal hereditament, the title, in fee simple, to which passes to a purchaser by apt conveyance, there would be no more propriety in claiming a title in the grantor to the space it occupies than there would be in claiming a similar right in a vendor of the surface to the space developed by the vendee in digging the cellar and foundations of a house. We are altogether unwilling to adopt any such view of the rights of the parties in either of such cases. * * * According to the averments of the bill the tunnel or way is cut through a vein of coal two hundred feet below the surface and is twelve feet high, and extends in the vein all the way from the one side to the other of the tract. In this way or chamber the plaintiffs, as owners of the surface, have no right or title. They have no access to it; they cannot use it; they are in no manner obstructed or injured by it."

We think it must be conceded the foregoing decisions are in point, and we have been referred to no cases so nearly analogous or where the precise question has been involved holding a contrary view.

We are therefore of opinion the decree of the circuit court was in accordance with the law, and the decree is affirmed.

*Decree affirmed.*