Syllabus.

# Richmond.

## CLAYBORN, ET AL V. CAMILLA RED ASH COAL CO., INC., ET AL.

November 18, 1920.

Absent, Burks, J.

1. MINES AND MINERALS—*Grantee of Coal—Estate of Grantee in the Coal and its Containing Chamber—Rule Generally Prevailing.*—The prevailing, if not wholly unbroken, current of authority supports the general proposition that a grantee of coal in place is the owner, not of an incorporeal right to mine and remove, but of a corporeal freehold estate in the coal, including the shell or containing chamber, and that as such owner he has the absolute right, until all of the coal has been exhausted, to use the passages opened for its removol for any and all purposes whatsoever, including in particular the transportation of coal from adjacent lands, so long as he operates and uses the passages with due regard to the rights of the surface owner.

2. MINES AND MINERALS—*Grantee of Coal—Estate of Grantee in the Coal and its Containing Chamber—Virginia Rule—Stare Decisis.*—Notwithstanding the authorities in support of the doctrine of the preceding syllabus, the question being a new one in Virginia, no rule of property can be said to have arisen in this State upon the subject, and the Supreme Court of Appeals not being bound by precedent holds in the instant case that while undoubtedly the grantee of coal in place owns a corporeal hereditament in the coal, he has no corporeal estate in the stratum above and below the coal—the containing chamber—the conveyance carries the estate in the coal only, with the necessary incidental easement to use the containing walls for support and for the purpose of getting the coal out.

3. MINES AND MINERALS—*Coal Lease—Right to Use Haulway.*—A mine owner, operating under a lease, does not lose his rights in a particular haulway as fast as the coal is taken out of it. Reasonable mining rights would entitle the mine owner to use all of the spaces left by him| for transporting coal from other parts of the same tract so far as such spaces were reasonably necessary for that purpose.

4. MINES AND MINERALS—*Conveyance of Coal—Rights of Grantee.*—When a surface owner conveys the coal on his land, whether or not he specifies that the grantee shall have the right to mine and remove the same, he knows that such right must exist if the grantee is to get any benefit of his estate, and it makes no difference whether he expressly grants the right to mine and remove the coal (if only these general terms are used), or leaves such right to be implied by law; but when nothing more is said than that the coal is granted, or that the coal is granted with the right to mine and remove it, nothing but the coal and the right to remove it ought to be understood to pass by the deed. If the coal owner expects more in connection with his easement for removing the coal, he ought to stipulate for it.

5. MINES AND MINERALS—*Extent of Mining Easement—Grantee Hauling Coal from Adjacent Tract Through Haulway on Tract for Which Mining Rights Have Been Granted—Case at Bar.*—A coal mining company, under a deed conveying "all the coal on, in or under" a certain tract of land, "with the right to mine and remove" the same, cannot use an underground haulway through the tract for hauling coal mined by the company upon an adjacent tract. Such use of the haulway places an additional and unlawful burden upon the estate of the grantor, and will be restrained.

6. MINES AND MINERALS—*Use of Haulway for Mining Coal on Adjacent Tract—Adequate Remedy—Injunction.*—While a coal company, operating under a mining lease, has the unquestioned right to use a tunnel so long as it needs it in hauling coal from the tract, which, under the contract, was the subject of the lease, the use of the tunnel for any other purpose is a trespass; and the continued and daily use of the tunnel by the company for hauling coal from an adjacent tract is a continuing trespass, for which the only adequate remedy is an injunction.

7. INJUNCTIONS—*Discretion of Court.*—The writ of injunction is summary and extraordinary, and does not lie *ex debito justiciae.* The granting of it rests in sound judicial discretion, to be exercised upon a consideration of the nature and circumstance of the case.

8. MINES AND MINERALS—*Mineral Lease—Use of Surface in Connection With the Mining on an Adjacent Tract.*—The use by a mining company of the surface of a tract of land, of which it is the grantee of the coal, as a travelway for its men and stock for the purpose of mining coal on an adjacent tract, is a violation of the grantor's rights, and is a continuing trespass, which will be restrained.

Appeal from a decree of the Circuit Court of Russell county. Decree for defendant. Complainants appeal.

*Reversed.*

The opinion states the case.

*G. B. Johnson* and *S. H. & Geo. C. Sutherland,* for the appellants.

*Bird & Lively* and *McClaugherty, Scott & Richardson,* for the appellees.

KELLY, P., delivered the opinion of the court.

This is a suit in equity brought by the appellants, W. F. Clayborn and others, against the appellee, Camilla Red Ash Coal Company, for an injunction and accounting. The decree appealed from denied the relief sought.

The appellants are the owners in fee of a tract of land containing about eight acres, known as the Helton tract, except the coal thereon which belongs to the appellee under a deed made in 1887 conveying "all the coal on, in or under" the land, "with the right to mine and remove" the same. Adjoining this Helton tract on the west, the company owns in fee a tract of 2¾ acres; and adjoining the former on the east the company owns and operates a coal lease upon what is known as the Burk land. On the 2¾-acre tract the company has a coal tipple and a mine opening or drift-mouth at a point which for convenience we may designate as "A." From that point it has driven an underground haulway which extends east about seventy-five feet through the 2¾-acre tract to the line of the Helton land, and then all the way through the latter and beyond to a second drift-mouth at a point which we may designate as

"B" on the Burk land, about forty or fifty feet beyond the east line of the Helton tract. Thence the haulway extends a short distance in a northeasterly direction over the surface of the Burk tract to a third opening or drift-mouth, which we may designate as "C," and from the latter the coal company has projected and extended its underground mining in such way as that it is now bringing out through the last named drift-mouth at "C" coal mined from both the Burk tract and the Helton tract, and conveying all of it through the Helton tract by means of the underground haulway between the points "A" and "B," as designated above. Until the haulway between these two points was completed, the Helton tract was mined from entries or rooms leading off from that haulway, and during that time the coal mined from the Burk tract was brought from the drift-mouth at "C" to the tipple at "A" over a surface route located in part on appellants' land and used over that land under a contract pursuant to which the appellants were paid the sum of ten cents per ton for all coal thus transported. After the underground haulway reached the drift-mouth at "B," however, the plan of operation was changed, and since then the Helton tract has been mined from the east side through entries leading off from the haulway extending back from the drift-mouth at "C" on the Burk tract, and the entire output from both tracts has come through the Helton haulway to the tipple at "A." The evidence is conflicting as to the exact proportion, but it is conceded that the company is taking considerably more coal from the Burk tract than from the Helton tract. All of the coal has been taken out of the haulway between "A" and "B" from the upper to the lower side of the seam, and in addition thereto some of the underlying stone has been removed, so that the track through the mine is resting upon the substratum, and not upon any part of the coal vein.

Considerable attention was given in the argument to the

change in the manner of mining the Helton tract, the company contending that the change was made because the dip of the coal seam makes it best to mine the property from the east side, and the appellants, on the other hand, contending that the real reason for the change was to afford a plausible pretext for hauling the coal from the Burk land through the main haulway. In our view of the case, how-

ever, this question is not one of controlling importance. It does not affect the legal rights of the parties. It might, in some cases, be entitled to consideration in determining whether equity should grant or refuse an injunction.

The accompanying sketch is not drawn to scale, nor does it purport to show the comparative acreage of the tracts, nor the exact bearings and distances, but it will serve to accurately illustrate the situation.

When the company completed the haulway from "A" to "B" and began to haul coal from the Burk land through the Helton tunnel, the appellants protested, claiming that the company had no right to use the tunnel for any purpose except such as was connected with the mining of coal on that tract. The company disregarded the protest, and this suit followed.

[1, 2] The question thus arising is full of interest and importance. It is new in Virginia, but has been frequently passed upon under varying facts and circumstances in cases arising in England and in this country. The prevailing if not wholly unbroken current of authority supports the general proposition that a grantee of coal in place is the owner, not of an incorporeal right to mine and remove, but of a corporeal freehold estate in the coal, including the shell or containing chamber, and that as such owner he has the absolute right, until all of the coal has been exhausted, to use the passages opened for its removal for any and all purposes whatsoever, including in particular the transportation of coal from adjacent lands, so long as he operates and uses the passages with due regard to the rights of the surface owner. See MacSwinney on Mines 67; 2 Snyder on Mines, sec. 1010, p. 853; 18 R. C. L. 1149; 20 Am. & Eng. Ency. L. (2d ed.), 774; 27 Cyc. 699; 3 Lindley on Mines (3d ed.), p. 2008, sec. 813a; *Proud* v. *Bates,* 34 L. J. Ch. N. S. 406; *Hamilton* v. *Graham,* L. R. 2 Sc. & Div. App. 166; *Lillibridge* v. *Lackawanna Coal Co.,* 143 Pa. St. 293, 22 Atl. 1035, 24 Am. St. Rep. 544, 13 L. R. A. 627; *Westerman* v. *Penn. Salt Mfg. Co.,* 260 Pa. St. 140, 103 Atl. 539; *Armstrong* v. *Maryland Coal Co.,* 67 W. Va. 589, 69 S. E. 195; *Bagley* v. *Republic Iron & Steel Co.,* 193 Ala. 219, 69 So. 17; *Schobert* v. *Pittsburg Coal & Mining Co.,* 254 Ill. 474, 98 N. E. 945, 40 L. R. A. (N. S.) 826, Ann. Cas. 1913-B, 1104; *Moore* v. *Indian Camp Coal Co.,* 75 Ohio St. 493, 80 N. E. 6; *Madison* v. *Garfield Coal Co.,* 114 Iowa, 56, 86 N. W. 41.

We are unable to follow to their full extent the authorities upon this question, notwithstanding their high source and formidable array. They seem to us unsatisfactory and illogical in themselves, and at variance with fundamental legal principles. In taking this position we are not unmindful of the credit which ought to be given to a long line of judicial precedent, and have broken away from it in this case with reluctance and after much deliberation. The question, however, as already indicated, is an open one in Virginia. No rule of property can be said to have arisen in this State upon the subject. With particular reference to the case in hand, it cannot even be argued that the grantee of the coal may have contracted upon the faith of the line of decisions in other American States, for the coal on the Helton tract was severed by a deed made in 1887 to the coal company's predecessor in title, and that was prior to any adjudication on the subject in this country. The older cases of *Consolidated Coal Co.* v. *Schmisseur*, 135 Ill. 371, 25 N. E. 795, and *Genet* v. *Delaware & H. Canal Co.*, 122 N. Y. 505, 25 N. E. 922, sometimes cited for the proposition, are not in point. The former did not pass upon the legal rights of the parties, but merely held that under the terms of the deed for the coal and under the peculiar facts of the case, a court of equity ought not to enjoin the grantee of the coal on a certain tract of land from using the entries and shaft on that track for the transportation of coal from adjacent lands. The latter (the New York case) involved a contract which expressly conferred on the mine owner the right here in question.

We are, therefore, not bound by precedent in this case, and are at liberty to follow the view which seems to us most in accord with right and justice and with the legal principles applicable to the question.

Undoubtedly the grantee of coal in place owns a corporeal hereditament; but all the American authorities agree that

the right of the grantee to use the space left by the removal of coal terminates and the space reverts to the grantor when the coal has been exhausted. If, as contended, the conveyance of the coal carries with it the stratum above and below the coal—the containing chamber—why should the ownership of the space terminate as soon as all of the coal on the tract has been mined? We think the true and rational view is that the reverter takes place because the grantee has never at any time had a corporeal estate in the containing walls, and that the conveyance carries the estate in the coal only, with the necessary incidental easement to use the containing walls for support and for the purpose of getting it out, just as it carries the right to sink a shaft or drive an opening when necessary upon and through the surface to reach and remove the coal. We are unable to see any substantial difference between the use of a mine track in the mine which rests upon the stratum or earth below the coal, and a tramway outside of the mine resting upon the surface. The right to use both, if both are reasonably necessary, when not expressly granted, is always implied in the deed for the coal, and yet the unmistakable result of the authorities, including those which hold that the tracks in the mines may be used to haul coal from adjoining lands, is that mining operations on the surface must be confined to the coal on the particular tract.

We shall not undertake a complete review of the authorities in support of the generally accepted doctrine. It would seem sufficient to say of them in general that they are right if the first and leading American case was right, and that they are wrong if that case was wrong, because, in the main, all the others have simply followed, with more or less elaboration, the principles laid down in that case. We refer to the case of *Lillibridge* v. *Lackawanna Coal Co.*, 143 Pa. St. 293, 22 Atl. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544. The observations in the majority opinion in that case

(three of the seven judges dissenting) go to the full length contended for by the coal company in the controversy before us; but the Pennsylvania court, evidently not satisfied with the ultimate and necessary result of its discussion, adds this significant saving clause: "There is no averment in the bill that all the coal in the vein has been taken out, or that the tunnel is opened on the bedrock underneath the vein, but on the contrary it is alleged that the tunnel has been cut through the coal, by which we understand it is in the very body or substance of the coal which was bought by the defendant." It thus appears that the court in that case was not dealing with the usual and ordinary case, but with one in which the owner of the coal, instead of invading the underlying stratum, had cut a tunnel in such a way as that there was coal above and coal below—in other words, had simply cut a hole through his own property—a distinction which renders most of the opinion *obiter dictum*. Not one of the cases, so far as we have observed, which have followed this Pennsylvania case, has adverted to this distinguishing feature of the decision. We have mentioned it, not so much because it may have justified the result in that particular case, but because it indicates that the court itself recognized the inherent weakness in the proposition that when a man buys coal with the right to remove it, he becomes the owner of something which he does not buy. We may add that at least some of the English authorities cited and relied on in the *Lillibridge Case* appear to have involved tunnels which could very well have been regarded as exclusively supported underneath by minerals owned by the grantees.

Again, in the course of the opinion in the *Lillibridge Case*, the court uses this language: "Under all the decisions the coal in place was absolutely owned in fee simple by the defendant. In a state of nature the coal necessarily occupied space. How could the defendant own the coal absolutely

and in fee simple and not own the space which it occupied. Or how is it possible to conceive of such a thing as the ownership of the space independently of the coal?" It seems to us that a more pertinent and convincing question would have been this: If the defendant owned both the coal and the space, why did his right to the space terminate immediately when the coal was removed? A somewhat similar situation arises when one buys a standing tree. He gets the tree as a part of the real estate with an easement for support and removal, but he does not acquire any corporeal right in the soil or in the space which the tree occupies. It seems to us that the true and perfectly patent principle is that when a man buys coal, whether he stipulates for the privilege of taking it out or not, he simply gets the coal with the right to remove it. The coal is his property. As to that he has a corporeal estate just as he has in standing timber. Coal and timber become personal property as soon as they are severed. The right to mine and remove is an incorporeal hereditament, an easement expressed in or incident to the grant of the fee, and in the exercise of this easement the grantee has no more right to put an additional burden upon the servient estate than he would have to haul timber from an adjoining tract over a tract upon which he had bought the timber with the right of removal. It is only fair to say that this view is directly challenged and rejected in the Pennsylvania case under consideration. The vital difference between the doctrine of that case and the conclusion we have reached is that the Pennsylvania case *assumed* that the conveyance of coal carries a corporeal interest in the walls containing the coal as well as in the coal itself, whereas under our view this assumption is not warranted, and the conveyance carries a corporeal interest in the coal only, with an easement in the walls for support and removal.

The reasoning of the Pennsylvania court in the later case

of *Chartiers Block Coal Co.* v. *Mellon*, 152 Pa. 286, 25 Atl. 597, 18 L. R. A. 702, 34 Am. St. Rep. 645, cannot in our judgment be reconciled with the rule apparently approved, though, as shown above, not actually involved in the decision, in the *Lillibridge Case*. In the *Mellon Case*, dealing with the right of the surface owner to sink a shaft through an entry in coal owned by another to reach a deposit of oil below, it was held that when the surface owner has conveyed the coal under his land, his legal right of access to the strata underlying the coal is clear; that the grantee of the coal owns nothing but the coal and the right of access thereto and removal thereof; that when all the coal is removed the estate therein ends and the space occupied reverts to the grantor by operation of law; *and that the grant of the coal does not convey any interest in the strata underlying it.* The court in that case, per Paxon, C. J., said: "The grantee of the coal owns the coal but nothing else, save the right of access to it and the right to take it away. Practically considered, the grant of the coal is the grant of a right to remove it. This right is sometimes limited in point of time; in others it is without limit. In either event it is the grant of an estate determinable upon the removal of the coal. It is, moreover, a grant of an estate which owes a servitude of support to 'the surface. When the coal is all removed the estate ends for the plain reason that the subject of it has been carried away. The space it occupied reverts to the grantor by operation of law. It needs no reservation in the deed, because it was never granted. The grantee has the right to use and occupy it while engaged in the removal of the coal, for the reason that such use is essential to the enjoyment of the grant. It cannot be seriously contended that after the coal is removed the owner of the surface may not utilize the space it had occupied for his own purposes, either for shafts or wells, to reach the underlying strata. The most that can be

claimed is that, pending the removal, his right of access to the lower strata is suspended. The position that the owner of the coal is also the owner of the hole from which it has been removed, and may forever prevent the surface owner from reaching underlying strata, has no authority in reason, nor do I think in law."

In the still later Pennsylvania case of *Webber* v. *Vogel,* 159 Pa. St. 235, 28 Atl. 226, the court held that the grantee of the coal, with the right of way for mining and removing it, had no right to haul coal from adjoining lands through an open entry or pit on the granted premises. The opinion does not mention the *Lillibridge Case,* but the decision is in apparent conflict therewith. Upon a later appeal of the *Webber Case,* 189 Pa. St. 156, 42 Atl. 4, the court undertook, with limited success, as it seems to us, to reconcile the former decision with the *Lillibridge Case,* on the ground that the former was dealing principally with surface rights, while the latter was dealing with the right to transport coal from other lands, not over the surface, but through underground passages—a distinction for which we think there is no logical foundation.

Another evidence of the inconsistency and the danger of the rule approved in the *Lillibridge Case* is found in the discussion of the question on the second appeal of the *Webber Case,* 189 Pa. St. 156, 42 Atl. 4, where the court stated that the right to transport coal from adjoining lands exists only so long as the coal on the particular tract in question is being mined in good faith, and that it would be a perversion of the intention of the parties to use such passageways merely and only for the purpose of reaching other coal, and, besides, that such use would be a continual menace to the stability of the surface. This qualification of the doctrine seems to us not only illogical but inherently incapable of any practical administration. There is no safe or sound middle ground. The instant case affords a ready illustration of

this statement. The Camilla Coal Company either owns in fee simple the substrata under the coal on the Helton tract, or else it has the right merely to use it to get out the coal. If the former, it can use the substrata for any purpose it pleases; if the latter, it can use it only as an easement in connection with mining the coal on that tract. But even if there were any reasonable basis for saying that its owner-ship of the substrata existed only so long as it operated the mine on the Helton tract in good faith, how is the question of such good faith to be reasonably and fairly determined? It is mining a part of the Helton tract to-day, but is taking the greater part of its coal from the adjoining tract. Is it doing this sort of mining in good faith, or is it the plan to so operate the Helton mine as that there will always be some coal unmined on that tract so long as it may desire to bring coal from other tracts? How is the question to be fairly and safely answered?

In this connection it seems appropriate to refer briefly to the West Virginia case of *Armstrong* v. *Maryland Coal Co.*, 67 W. Va. 589, 69 S. E. 195, cited and relied upon by the appellee. The main question at issue here came up rather indirectly and remotely in that case, but in so far as it was dealt with at all, the opinion, like all others in America on the subject, purported to follow the Pennsyl-vania decisions. A significant suggestion is found in the opinion, however, and one entirely inconsistent with the second *Webber Case*, in which the West Virginia court (67 W. Va. 608, 69 S. E. p. 203) seems to hold that the grantee, after the coal has been practically exhausted in the par-ticular tract, may extend his ownership of the haulways therein for an indefinite period for the purpose of trans-porting coal from other lands, merely "by leaving some of the coal unmined until the coal from adjoining tracts could be removed, and that if need be a few pillars could be left for subjacent support, which would answer all the require-ments."

[3] The case of *Moore* v. *Indian Camp Coal Co.,* 75 Ohio St. 493, 80 N. E. 6, expressly declares that while the grantee of coal in place becomes the owner of a fee simple estate therein, such estate "is, of course, determinable upon the exhaustion of the mine," a concession which, as we have already pointed out, seems to us to carry with it a refutation of the conclusion reached in all of these cases. Furthermore, in the course of the opinion, the court uses this argument: "It is evident that if the mine owner is to be limited to the exact thickness of the vein of mineral with no right to remove any portion of the superimposed strata for necessary headway in working or in making the mine secure, or with no right to use or remove any portion of the underlying strata for drainage, support for tramways and the like, the grant to him of ownership in the mineral would be of little practical value, or none at all." There is no sort of occasion for thus attempting to award to the owner of the mineral a corporeal estate in the underlying strata, "for drainage, supports for tramways and the like," because he undoubtedly has the right of drainage and support, just as he has the right to use the surface for a drift-mouth and for tramways, not as a part of his own estate, but as an easement incident to its reasonable enjoyment. Nor is there, as we see it, any occasion for the following comment of the court: "It is therefore illogical and inconsistent and would be impracticable and unjust to hold that, as fast as the mineral is taken out the remaining space should revert to the owner of the upper strata. Such a narrow and technical interpretation of the grant would result in embarrassment to the mining industry which would be intolerable." It is not contended in this case, and could not be reasonably contended in any case, that as fast as the coal is taken out of a particular haulway the mine owner loses his rights therein. Upon the contrary, it is conceded in this case, and would have to be conceded in every case, that reasonable

mining rights would entitle the mine owner to use all of the spaces left by him for transporting coal from other parts of the same tract so far as such spaces were reasonably necessary for that purpose.

[4] When a surface owner conveys the coal on his land, whether or not he specifies, as was done in this case, that the grantee shall have the right to mine and remove the same, he knows that such right must exist if the grantee is to get any benefit of his estate, and it makes no difference whether he expressly grants the right to mine and remove the coal (if only these general terms are used), or leaves such right to be implied by law; but when nothing more is said than that the coal is granted, or that the coal is granted with the right to mine and remove it, nothing but the coal and the right to remove it ought to be understood to pass by the deed. If the coal owner expects more in connection with his easement for removing the coal, he ought to stipulate for it. Instead of applying this rule, the courts have reversed it, and have held that if the grantor does not intend to allow an easement in addition to that which is granted expressly or by implication, he must stipulate against it. If the decisions which we have reviewed are sound, they lead necessarily and unanswerably to the conclusion that in the instant case so long as any part of the coal remains unmined on the Helton tract, the coal company may not only haul coal from the Burk tract and from any other tract, however remote, but may also haul lumber or anything else which it chooses through the Helton tunnel, for the simple reason that it is the absolute fee simple owner of the haulway.

In *Schobert* v. *Pittsburg C. & M. Co.*, 254 Ill. 474, 98 N. E. 943, 40 L. R. A. (N. S.) 826, Ann. Cas. 1913-B, 1104, the court rested the opinion upon the authority of the cases of *Consolidated Coal Co.* v. *Schmisseur* (Ill.), *supra*, and *Lillibridge* v. *Lackawanna Coal Co.* (Pa.), *supra*, all of which have been commented upon.

Any further discussion of the authorities, which we freely admit are numerous and practically all opposed to the views we have expressed, would amount to nothing more than a useless repetition of what has already been said in the course of this opinion. We repeat that we have been reluctant to depart from the apparently unbroken line of judicial decision upon this important question; but we have been unable to see that the doctrine, thus so strongly supported, is based upon sound legal principles. The opposing decisions perhaps had their genesis in considerations of expediency, and in a well meant concession to the convenience and importance of the coal mining industry at an early period of its development.

[5, 6] In our opinion the use which the coal company in the instant case is making of the tunnel through the Helton tract in conveying coal from the Burk tract places an additional and unlawful burden upon the estate of the appellants which ought to be restrained. It is said, and is apparently true, that no substantial pecuniary damage is being done to the appellants by the use of the tunnel. The same might be said of the use of many other rights of way. A land owner might grant a right of way through his land to haul timber from that land and the grantee might be able to bring over that right of way timber from an adjoining tract without doing any additional damage, and yet nobody would question the right of the land owner to prohibit and enjoin such additional use of the way. The violation of a property right is a legal injury. The track through the Helton tunnel rests upon land owned by the appellants. The coal company has the unquestioned right to use that tunnel so long as it needs it in hauling coal from the residue of the Helton tract. The appellants have never challenged that right. The use of it for any other purpose is a trespass, and the continued and daily use which the company is now making of it is a continued trespass, for which the

only adequate remedy is an injunction. 1 High on Injunctions (4th ed.), secs. 22, 692, 702, 702-a; 4 Words & Phrases, p. 3772, *et seq;* 2 Words & Phrases, (N. S.), p. 1206, *et seq.*

[7] The writ of injunction is summary and extraordinary and does not lie *ex debito justiciae.* The granting of it rests in sound judicial discretion to be exercised upon a consideration of the nature and circumstances of the case. If the appellants in this case had acquiesced in the tortious acts of the appellee until the latter had expended large sums of money which would be lost in consequence of a belated injunction, or, if without any such acquiescence the loss entailed upon the appellee would be excessively out of proportion to the injury suffered by the appellants, or a serious detriment to the public, a court of equity might very properly and in accordance with recognized practice, deny the injunction and leave the parties to settle their differences in a court of law. If the deed for the coal had contained an express negative covenant against the use of the haulways for any other purpose than that of removing the coal on the Helton tract, then perhaps the court could not consider the question of comparative inconvenience or damage, but would be controlled by the express limitations in the deed. Where the negative or restrictive covenant is merely implied, however, the courts have more latitude of discretion. See 1 High on Inj. (4th ed.) secs. 22, 1135; *Consolidated Coal Co.* v. *Schmisseur, supra; Madison* v. *Ducktown, etc., Co.,* 113 Tenn. 331, 83 S. W. 658; Cooley on Torts (Students Ed.), p. 628.

But the case before us does not warrant a refusal of the injunction upon any of the exceptional grounds above mentioned. The appellee was allowed to transport coal from the Burk tract over the surface of the lands owned by appellants upon terms which appear to have been reasonable, and of which no complaint is made in the record. It is true

that appellee is mining both tracts now as a unit, but this was not necessary and the grantor of the coal on the Helton tract had nothing to do with making up that unit. The tracts are separate and distinct and each is susceptible of a separate mining operation. If it be true that the coal on the Helton tract, owing to the dip of the vein, can best be mined from the west side, the company is free to pursue that course, because the appellants do not, and they could not lawfully, question the right to bring the coal from the Helton land out through the Burk tract and back again through the main haulway in the Helton tract to the tipple at "A." The right to handle the Burk coal the same way, however, did not exist, was promptly challenged, and the challenge was disregarded. It is fairly apparent from the record that the company could have arranged with the appellants to use the Helton haulway for the Burk coal upon reasonable terms, just as had theretofore been done with reference to a surface right of way from the Burk tract to the tipple. Under these circumstances we think the company should be enjoined from further illegal use of the haulway.

[8] There is another branch of this case which may be briefly disposed of. It is conceded that the coal company is now, and at the time of the institution of this suit was, using the surface of the Helton tract as a travelway for its men and stock in going from the tipple at "A" to the drift-mouth at "C" for the purpose of mining coal on the Burk tract. Appellants do not object and have never objected to this, or any other reasonable use of the surface of the Helton land in connection with mining the coal thereon, but they do object to such use in so far as it is connected with the mining on the Burk tract, and have asked to have the same restrained. There was some conflict in the evidence as to whether the company had ever been notified by the appellants before this suit was brought that they must

not use the surface of the Helton tract as a passageway for men and stock in getting from the tunnel to the opening on the Burk tract in connection with the mining thereon; but whether this notice was given or not before the suit was brought, the suit itself was a sufficient notice, and it is conceded that the company has since that time continued to use the surface in the manner complained of. It is argued, as it was argued with reference to the use of the tunnel, that the appellants are not being damaged by this additional use of the surface, but whether this be true or not, it is certainly true that the additional use is in violation of appellants' rights, and is a continuing trespass. For the reasons already stated, the appellants are entitled to an injunction restraining this unlawful use of the surface.

The decree complained of will be reversed, and this court will enter an order enjoining and restraining the coal company from using the tunnel or the surface of the Helton tract for any other purposes than those reasonably necessary in connection with the mining on that track, and the cause will be remanded to the lower court for a reference to a commissioner to ascertain what damage if any the appellants have sustained by reason of the unlawful use of the tunnel and the surface by the company in connection with its operation on the Burk land.

*Reversed.*

PRENTIS, J., *dissenting:*

I cannot agree with the majority in its conclusions in this case, and because I think the question involved is one of great importance, I think that dissent should be expressed.

It appears from the majority opinion that its conclusions are contrary to the unbroken current of authority in England and in this country. I therefore think that the rule should be considered a rule of property, because doubtless many leases have been acquired in reliance upon the advice

51

of counsel as to their legal effect. I also think that this rule is based upon right reason, both because the supposed injury to the owner of the surface by a tunnel for the removal of the coal under his land, which does not disturb the surface, is usually negligible, as well as because the right claimed for the coal operator should be considered as an incident to the grant. To express it differently, I think that a coal operation should be considered as a unit. The seam of coal frequently lies under many different tracts of land, and to require a separate opening or tunnel upon each tract of land for the removal of so much of the seam as underlies that tract would so increase the expense of mining coal as to depreciate its value; so that it is for the interest of each of the owners of the surface, before the execution of his lease, that the mine be operated economically, and that the expense of mining the whole seam be reduced to the lowest possible amount. I think, therefore, that it is fair to assume that the owner of the surface has already received compensation in the price he has received for his lease, and that the right to transport all of the coal in the seam to the mouth of the mine should be considered to be a mere incident of the grant, and unless some special or unforseen damage appears, an injunction should be refused.

*Upon petition to rehear, March* 24, 1921.

PER CURIAM.

The court having maturely considered the petition for rehearing in this case is of opinion that the same should be denied.

In view of the insistence in the petition that the questions involved in this case ought not to be disposed of without the consideration of the full court, we deem it proper to add that Judge Burks, the only member of the court who did not hear the oral argument, participated in the consideration and decision of the case and concurs in the majority opinion and in the refusal to rehear.