PRESENT: Lemons, C.J., Goodwyn, Millette, Mims, Powell, and
Kelsey, JJ., and Koontz, S.J.


MALVA BAILEY

                                   OPINION BY
v.       Record No. 141702    JUSTICE S. BERNARD GOODWYN
                                 April 16, 2015
CONRAD SPANGLER, DIRECTOR OF
THE VIRGINIA DEPARTMENT OF
MINES, MINERALS AND ENERGY


UPON QUESTIONS OF LAW CERTIFIED BY
THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Pursuant to Article VI, Section 1 of the Constitution of
Virginia and our Rule 5:40, we accepted the following certified
questions from the United States District Court for the Eastern
District of Virginia:

> (1) Did the enactment of Virginia Code section
> 55.1-154.2[1] in 1981, see Acts of Assembly 1981, c.
> 291, change the ownership of the shell, container
> chamber, passage, and space opened underground for
> the removal of the minerals to the owner of the
> minerals for coal severance deeds executed before
> July 1, 1981 that did not otherwise provide for
> ownership of the shell, container chamber, passage,
> and space opened underground for the removal of the
> minerals? In other words, does the presumption of
> mine void ownership created by the statute apply to
> deeds executed before July 1, 1981?

---

[1] Because Code § 55.1-154.2 does not presently exist in the
Code of Virginia, we interpret the federal district court's
reference to the relevant statute as a reference to Code § 55-
154.2. We note that all other references to this statute in
the federal district court's order are to Code § 55-154.2.

(2)  If the answer is yes, and the presumption applies to coal severance deeds executed before July 1, 1981, and assuming that a predecessor in interest executed a valid coal severance deed in 1887, then under Virginia law what, if any, ownership interest in the mine voids would a subsequent grantee surface owner take if she were deeded the land in 1983? Would that grantee have any rights to the mine void under Clayborn v. Camilla Red Ash Coal Co., 128 Va. 383 (1920)?

### Factual Background

On May 5, 1887, George W. Sutherland and his wife severed the mineral estate underlying their parcel of property in Dickenson County, Virginia, from the surface estate[2] (Sutherland surface estate) and conveyed "all the coal, iron, petroleum oil and Gass [stet] and other ores and minerals lying and being in upon and under all that certain tract of land" to the Virginia Coal and Coke Company.  The severance deed did not specify who would own the resulting mine void[3] after all of the ores and minerals were removed.  On May 10, 1983, Malva Bailey (Bailey)

---

[2] "'Surface estate' is a term intended generally to refer to the rights of the owner of that portion of the original tract of land that has not been severed by deeds granting rights in the mineral estate or other resources of the tract of land."  Levisa Coal Co. v. Consolidation Coal Co., 276 Va. 44, 57 n.5, 662 S.E.2d 44, 51 n.5 (2008).

[3] As the federal district court indicates in its order certifying the questions to this Court, "mine voids" are "those spaces or passageways created from the removal of coal hundreds of feet below the surface."  Bailey v. Spangler, No. 3:14-cv-00556, at *1 (E.D. Va. filed Dec. 1, 2014).

2

and her husband acquired ownership of a portion of the Sutherland surface estate.

## Procedural Background

On July 7, 2014, Bailey filed a civil complaint in the Circuit Court of the City of Richmond, asking the court for a declaratory judgment in her favor, pursuant to 42 U.S.C. § 1983 (2012 & Supp. I 2013), regarding the alleged taking of her real property by Conrad Spangler (Spangler), the Director of the Virginia Department of Mines, Minerals and Energy. She alleged that by issuing mining permits authorizing Dickenson-Russell Coal Company, LLC (Dickenson-Russell) "to conduct mine operations" in the mine void beneath her property, Spangler took her private property rights for private use, purportedly pursuant to Code § 55-154.2.[4] Bailey asked the court to declare "Chapter 695, Virginia Acts of Assembly 2012 Session, an act to amend and reenact §§ 45.1-181 and 55-154.2 of the Code of Virginia, relating to mine voids" unconstitutional both facially and as applied because it deprived her of her private

---

[4] Bailey's constitutional challenge now pending before the federal district court is directed at the 2012 Act that amended and reenacted Code § 55-154.2. 2012 Acts ch. 695. Code § 55-154.2 was originally enacted on July 1, 1981. 1981 Acts ch. 291. The federal district court's certified questions pertain to a provision of Code § 55-154.2 as enacted in 1981. Thus, references to the statute in this opinion are to the 1981 version of the statute unless otherwise noted.

property rights in the mine void underneath her property in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

Spangler removed the case to the United States District Court for the Eastern District of Virginia. He then filed a motion to dismiss, arguing that Bailey did not own the mine void beneath her property because Code § 55-154.2 divested her predecessors in title of ownership of the mine void before Bailey acquired her property in 1983. According to the federal district court, under Spangler's view, "the coal owner became the actual owner [of the mine void] on July 1, 1981," when Code § 55-154.2 went into effect.

### Analysis

In Clayborn v. Camilla Red Ash Coal Co., 128 Va. 383, 390, 105 S.E. 117, 119 (1920), a case of first impression, this Court held that a surface estate owner retains ownership of a mine void if the severance deed does not expressly convey the mine void to the mineral estate owner. Code § 55-154.2, originally enacted by the General Assembly in 1981, is entitled "Presumption regarding estate of owner of mineral rights" and, in contravention to the holding in Clayborn, states as follows:

> Except as otherwise provided in the deed by which the owner of minerals derives title, the owner of minerals shall be presumed to be the owner of the shell, container chamber, passage and space opened underground for the removal of the minerals, with full

4

right to haul and transport minerals from other lands and to pass men, materials, equipment, water and air through such space. No injunction shall lie to prohibit the use of any such shell, container chamber, passage or space opened underground by the owner of minerals for the purposes herein described. The provisions of this section shall not affect contractual obligations and agreements entered into prior to July one, nineteen hundred eighty-one.

Bailey argues that Code § 55-154.2 explicitly states that it does not apply to deeds that were executed before the statute became effective in 1981 and that Code § 55-154.2 did not divest her predecessors in title of their ownership of the mine void underlying the surface estate. Moreover, Bailey contends that interpreting Code § 55-154.2 to apply to deeds that were executed before 1981 would give "retroactive effect" to the statute, which is disfavored by this Court. Because the relevant severance deed in this instance was executed in 1887, she argues that this Court's rule from Clayborn applies and that she owns the mine void beneath her portion of the Sutherland surface estate.

According to Spangler, the purpose of Code § 55-154.2 "was to facilitate mineral extraction from mines" by removing the ability of a surface owner, without an express grant of ownership of a mine void, to impede mining operations. Spangler contends that deeds are not "contractual obligations and agreements" in the context of Code § 55-154.2. He claims that exempting severance deeds executed prior to July 1, 1981,

5

from the application of the statute would frustrate the purpose of the statute because most severance deeds predate the effective date of the statute. Thus, he concludes that the presumption of mine void ownership in Code § 55-154.2 applies to the 1887 deed and that Bailey has no ownership interest in the mine void below the surface estate she purchased in 1983.

Certified Question (1)

The first certified question of law relates to whether the presumption of mine void ownership created by Code § 55-154.2 applies to deeds executed prior to July 1, 1981.

Our goal in statutory interpretation is to carry out the General Assembly's intent "as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Board of Supervisors v. Windmill Meadows, LLC, 287 Va. 170, 179-80, 752 S.E.2d 837, 842 (2014) (citation and internal quotation marks omitted). We apply the plain meaning of unambiguous statutory language. Newberry Station Homeowners Ass'n v. Board of Supervisors, 285 Va. 604, 614, 740 S.E.2d 548, 553 (2013).

Virginia law does not favor retroactive application of statutes. Windmill Meadows, 287 Va. at 180, 752 S.E.2d at 843 (collecting cases). For this reason, we interpret statutes to apply prospectively "unless a contrary legislative intent is

6

manifest." <u>Id.</u> (citation and internal quotation marks omitted). "[N]ew legislation will ordinarily not be construed to interfere with existing contracts, rights of action, suits, or vested property rights . . . ." <u>Harbour Gate Owners' Ass'n v. Berg</u>, 232 Va. 98, 103, 348 S.E.2d 252, 255 (1986); <u>see also</u> <u>Gloucester Realty Corp. v. Guthrie</u>, 182 Va. 869, 875, 30 S.E.2d 686, 688-89 (1944) ("The general rule is that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or suits, and especially vested rights, unless the intention that it shall so operate is expressly declared."). Absent an express manifestation of intent by the legislature, this Court will not infer the intent that a statute is to be applied retroactively. <u>See</u> <u>Ferguson v. Ferguson</u>, 169 Va. 77, 87, 192 S.E. 774, 777 (1937) ("It is reasonable to conclude that the failure to express an intention to make a statute retroactive evidences a lack of such intention.").

The last sentence of Code § 55-154.2 exempts from the statute's application "contractual obligations and agreements entered into prior to [July 1, 1981]." Bailey asserts that a deed is clearly a contractual obligation or agreement and that the provisions in Code § 55-154.2 concerning the presumption of

7

mine void ownership should not apply to deeds executed before July 1, 1981.

Spangler argues that the plain meaning of "contractual obligations and agreements" in Code § 55-154.2 does not include severance deeds. Spangler also argues that the General Assembly purposefully differentiated between deeds on the one hand and contractual obligations and agreements on the other, and he notes that the General Assembly uses the terms within two sentences of each other in different ways. It is pointed out that the 1981 statute uses the word "deed" in the "except as" provision but the words "contractual obligations and agreements" in the "shall not affect" provision, and Spangler asserts that the Court should assume that different terms in the same statute are presumed to have different meanings. See Klarfeld v. Salsbury, 233 Va. 277, 284-85, 355 S.E.2d 319, 323 (1987). Spangler concludes that the natural reading of Code § 55-154.2 is that the statute applies retroactively to all deeds (unless the deed itself provides for ownership or use of the mine void) but not to "contractual obligations and agreements entered into prior to July 1, 1981."

The Court need not parse the language of the statute because we are of the opinion that both interpretations reach the same result. If, as Bailey contends, a "deed" is a

8

"contractual obligation" or "agreement" within the context of Code § 55-154.2, then the statute is explicitly nonretroactive. However, even assuming as Spangler contends, that a "deed" is not a "contractual obligation" or "agreement," there remains no manifest statement concerning the retroactive application of the statute to deeds.

We may not infer the retroactive application of Code § 55-154.2 to deeds executed prior to July 1, 1981, based upon the statute's express exemption of contractual obligations and agreements entered into prior to that date. Also, we are unpersuaded by the argument that exempting deeds executed prior to the statute's enactment will unduly limit the statute's application. That result in itself is not indicative of a contrary intent by the General Assembly because the legislature could have expressly stated that the statute retroactively applies to deeds, if it had desired to do so.

Nothing in the language of Code § 55-154.2 indicates a manifest legislative intent to retroactively apply the presumption of mine void ownership to deeds executed before the date the statute was enacted. Therefore, we hold that the presumption of mine void ownership created by Code § 55-154.2 does not apply to deeds executed before July 1, 1981.

The first certified question is thus answered in the negative.

Certified Question (2)

Having answered Certified Question (1) in the negative,

the Court concludes that Certified Question (2) is now moot.


<u>Certified Question (1)answered in the negative.</u>