## Staunton.

## ANNIE E. FRENCH, ET AL., v. STANGE MINING COMPANY, ET AL.

### September 21, 1922.

1. DISCOVERY—*Pure Bill of Discovery—Definition—Allegation that Only by Discovery Can Complainant Sustain His Demand.*—A bill in equity which seeks other relief is not a pure bill of discovery. By a pure bill of discovery full relief of equity is not asked, but only its aid to make the applicant stronger in a court of law, and in such bill it is not necessary to allege that only by discovery can the complainant sustain his demand.

2. DISCOVERY—*Bill Asking for Discovery and for Relief—Allegation that Complainant Could Not Recover Without the Discovery—Affidavit.*— A bill in equity seeking by the prayer for discovery to transfer to a court of chancery jurisdiction over a purely legal demand—*i. e.*, a demand for the value of ore unlawfully taken from land, must allege facts showing that complainant could not recover at all without the discovery. In addition to the requisite allegations in this respect, the complainant must make affidavit to the bill.

3. DISCOVERY—*Discovery and Relief—Necessary Allegations.*—Where the complainant asks a court of equity for both discovery and relief, and his demand is proper for the law court, and he seeks to transfer it to a court of chancery, he must show that only by discovery can he recover. He must allege that the facts concerning which a disclosure is sought are material, and that he has no means of proving those facts by the testimony of witnesses or by any other kind of evidence used in courts of law; that the only mode of establishing them is by compelling the defendant to make disclosure, and, therefore, that a discovery by suit in equity is indispensable.

4. TRESPASS—*Trespass on Real Estate—Remedies.*—For a trespass upon real estate—*e. g.*, the unlawful removal of ore from the land, the landowner may elect among several remedies at law. He can bring an action for damage to the land, or he can waive this damage and bring an action of detinue or trover for the ore or for its value.

5. DISCOVERY—*Discovery and Relief—Ore Unlawfully Removed—Necessary Allegations—Case at Bar.*—In the instant suit, where complainants sought to recover for ore unlawfully removed from their land, the allegations in the bill as to the discovery sought did not measure up to the requirements for a transfer of this legal demand to the equity forum. There were certain general allegations to the effect

that the complainants were dependent upon the disclosures called for in order to establish their claim. But these were mere conclusions of law which were negatived by the particular facts alleged in the bill.

6. Discovery—*Discovery and Relief—Sufficiency of Allegations to Sustain Bill—Number of Railroad Cars of Ore Shipped—Case at Bar.*—In the instant suit, where complainants sought to recover for ore unlawfully removed from their land, the bill prayed for a disclosure as to the number of railroad cars containing ore shipped over a certain railroad.

*Held:* That the information demanded would be readily available in an action at law.

7. Trespass—*Unlawful Taking of Ore from Land—Defendants as Witnesses—Sections 6236 and 6237 of the Code of 1919—Case at Bar.*— In the instant suit, where complainants sought to recover for ore unlawfully removed from their land, the bill prayed for a disclosure as to the number of railroad cars containing ore shipped over a certain railroad.

*Held:* That defendant shippers themselves were competent witnesses and might be compelled to testify for complainants; and sections 6236 and 6237 of the Code of 1919 (sections 3370 and 3371, Code of 1887) provide a simple and adequate method whereby, upon proper affidavit or interrogatories, these defendant shippers might be required to furnish in detail all such information, and all their books and writings relevant thereto.

8. Discovery—*Bills of Discovery Superseded by Statutory Provisions— Sections 6236 and 6237, Code of 1919.*—Bills of discovery are now in large measure superseded in practice by statutory provisions. Now that the defendants are competent witnesses and may be examined by the complainant on any matter involved in the litigation, it is very rare that a defendant is called upon for relief of this kind, as the complainant has ample remedy by sections 6236 and 6237 of the Code of 1919.

9. Discovery—*Bills of Discovery Superseded by Statutory Provisions— Mixed Bills—Sections 6236, 6237 and 6238 of the Code of 1919.*—It is true that section 6238 of the Code of 1919 provides that "the two preceding sections (6236, 6237) shall not preclude a person, who does not file such interrogatories or affidavit, from exhibiting his bill in chancery for a discovery, as he might have done if the said sections had not been enacted." But this provision has no effect upon the rule that where the disclosure is sought for the enforcement of a purely legal demand the discovery must be essential to the plaintiff's case.

10. Discovery—*Bills of Discovery Superseded by Statutory Provisions— Mixed Bills—Sections 6236, 6237 and 6238 of the Code of 1919.*—Sections 6236-6238 of the Code of 1919 do not abolish the relief in pure bills of discovery, or in bills for discovery in aid of the enforcement of an equitable right; but it would seem that they do have the effect

of eliminating this remedy "in mixed bills of discovery, when the jurisdiction at law is sought to be transferred to a court of equity, on the sole ground that discovery in equity is necessary." If the statutes in question do not go to the full extent here suggested, it is clear that they reduce to a minimum the cases in which a discovery in equity may be availed of in transferring to that forum jurisdiction of a legal cause of action.

11. DISCOVERY—*Suit for Ore Unlawfully Taken from Complainants' Land—Prayer for Disclosure of Number of Cars Shipped—Case at Bar.*—In a suit to recover for ore unlawfully taken from complainants' land, the bill prayed for disclosure as to shipments of ore over certain railroads by defendants alleging that they were unable to obtain this information because the railroads pursuant to the "provisions of a federal statute" refused to furnish the information.

*Held:* That the information sought might be obtained by summoning the agents of the railroad company to testify in an action at law, as the statute referred to (U. S. Comp. St. 1918, p. 1362, section 8583, subsection 6) contained an express proviso, that nothing in the act should be construed to prevent the giving of such information in response to any legal process under authority of any State or federal court.

12. DISCOVERY—*Recovery for Ore Unlawfully Taken from Complainants' Land—Prices for which Ore Sold—Case at Bar.*—In a suit to recover for ore unlawfully taken from complainants' land, the bill prayed for disclosure of the price paid defendants for the ore removed.

*Held:* That the prices received by defendants were not material, as the complainants were not entitled to recover the purchase price of the ore as a finished product.

13. DAMAGES—*Trespass—Ore Unlawfully Taken from Land—Measure of Damages.*—Where one unlawfully takes ore from the land of another, the measure of damages would be the purchase price of the ore as a finished product if the trespass is willful, but if the trespass is not willful but under a claim of right, the measure of damage is the value of the ore in place, or what may be termed its royalty value.

14. TRESPASS—*Willful Trespass—Burden of Proof.*—Every trespass is *prima facie* willful, and the trespass being conceded or proven, the burden of proof is on the defendant, unless it appears from the evidence of the plaintiff, to show that the trespass was not willful.

15. TRESPASS—*Willful Trespass—Trespasser Asserting Title—Case at Bar.*—In the instant case, a suit to recover for ore taken from complainants' land, the willfulness of the defendants' conduct was negatived by the allegations of the bill, the defendants asserting title to the whole of a boundary of 177 acres, and actually prevailing in that claim as to about one-half of the land.

16. DISCOVERY—*Suit for Ore Unlawfully Removed from Complainants' Land—Amounts Paid for Transportation and Hauling.*—In a suit to recover for ore unlawfully taken from complainants' land, the bill prayed for disclosure of the amount paid by defendants to a corporation

for transportation and hauling the ore, and also of money paid by any of the defendants in the construction of the railroad. The prayer was not confined to money received from sales of the ore and paid to the corporation, but if it were, the amount so paid would have had no bearing upon the right of the complainants to recover nor upon the proper amount of such recovery. The information, therefore, was wholly immaterial for any purpose of the suit, and even if material, the facts sought to be elicited could be obtained at law from the defendants and from the agents of the corporation as witnesses.

17. DISCOVERY—*Ore Unlawfully Taken from Complainants' Land—Payments by Defendants to Their Predecessor in Title.*—In a suit to recover for ore unlawfully taken from complainants' land, the bill asked disclosures as to the date and amounts paid by defendants on the purchase price of the large boundary of land which defendants alleged contained the ore in question, and how much, if anything, was still due and owing. The prayer was not limited to moneys derived from the sale of ore from complainants' lands.

*Held:* That complainants were not entitled to such discovery, as none of the disclosures sought were pertinent to the establishment of complainants' alleged cause of action, and if the information was pertinent, it could as readily be obtained from the defendants as witnesses in an action at law as by a discovery in equity.

18. DISCOVERY—*Strangers—Bill of Discovery Against a Mere Witness.*— Where the sole object of the discovery is to obtain evidence from a mere stranger to the controversy, the bill cannot be sustained, as it is well settled that a bill of discovery will not lie against a mere witness.

19. ACCOUNTS AND ACCOUNTING—*Equity Jurisdiction—Simple Account.*— In a suit to recover for ore unlawfully taken from complainants' land, a prayer for an account is not sufficient to give equity jurisdiction upon the ground of accounting, where no fiduciary relationship existed between the parties, and no equitable interest or estate was involved. And even if complainants' theory as to the measure of damages was allowed, the account would be a very simple one with the items all on one side.

20. ACCOUNTS AND ACCOUNTING—*Equitable Jurisdiction—Remedy at Law Inadequate.*—A court of equity will interpose, even in the class of cases where courts of law have concurrent jurisdiction, and without the existence of a specific ground of equity, whenever it appears that the remedy at law is less adequate than that in equity to do full and complete justice between the parties; and this is the basis of equitable jurisdiction in case of mutual accounts, long and intricate accounts, repeated and aggravated trespass, and the investigation of a contract embracing a multitude of terms.

21. ACCOUNTS AND ACCOUNTING—*Equitable Jurisdiction—Number of Parties Defendant—Case at Bar.*—In the instant case there was no relationship of the parties upon which to base what is known as a true

bill of account. The demand was purely legal and no discovery was necessary. No mutual or complex account was involved. No other equitable ground, incidental to the main relief sought, existed to give color to the jurisdiction of equity. Under these circumstances, the authorities uniformly deny the right to sue on the account in equity. And this conclusion is not affected by the large number of defendants named in the bill, because no complexity in the account arose from that source.

22. Subrogation—*General Doctrine.*—Whenever one person is compelled to pay a debt or discharge an obligation for which he is only secondarily liable, in person or in property, and hence has recourse over against the person or the property primarily liable, for exoneration or contribution, a court of equity will subrogate the person thus secondarily liable to the position of the creditor whom he has satisfied, as to every lien, preference or other special advantage possessed by the latter at the time of such payment.

23. Subrogation—*Contract—Relationship of Principal and Surety.*—While subrogation does not rest in contract, either express or implied, it does depend upon a relationship of principal and surety, or of primary and secondary liability, or a situation in which one person is compelled, even though only for his own protection and without obligation to another, to pay some other person's debt.

24. Subrogation—*Relationship of the Parties—Debtor and Creditor.*— Defendants purchased a large boundary of land from the Camp Manufacturing Company. Complainants established their title to a part of this boundary and brought the instant suit to recover for ore removed from this part by defendants. Complainants claimed to be entitled to be subrogated to the rights of the company for any money received from ore removed from their land by the defendants, which was paid to the Camp Manufacturing Company on the lien which it held on the large boundary of land for purchase money.

Held: That as no relationship of primary and secondary liability existed, but merely one of debtor and creditor between the complainants and the trespassing defendants, the claim for subrogation could not be sustained.

25. Multiplicity of Suits—*Jurisdiction of Equity.*—Equity will assume jurisdiction to avoid a multiplicity of actions.

25½. Multiplicity of Suits—*Jurisdiction of Equity—Where Party Claims to Have Some Common Right Against a Number of Persons.*—Equity will assume jurisdiction to prevent a multiplicity of suits, where the same party has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as codefendants.

26. Multiplicity of Suits—*Equity Jurisdiction—Necessity of Simplifica-*

*tion or Consolidation of the Issues.*—Before equity will assume jurisdiction to prevent a multiplicity of suits, the equity suit must result in a simplification or consolidation of the issues. If, after numerous parties are joined, there still remain separate issues to be tried between the several parties, nothing has been gained by the court of equity's assuming jurisdiction; and in such a case, while the bill has only one number on the docket and calls itself a single proceeding, it is in reality a bundle of separate suits, each of which is no doubt similar in character to the others, but rests nevertheless upon separate and distinct liabilities.

27. MULTIPLICITY OF SUITS—*Number of Actions—Inadequacy of Legal Remedy.*—While the particular number of actions which will support the ground of equity jurisdiction to prevent a multiplicity of suits is not fixed, and depends upon the circumstances of each case, the very foundation of the jurisdiction is the inadequacy of the legal remedy arising out of a multiplicity of actions.

28. MULTIPLICITY OF SUITS—*Number of Actions—Case at Bar.*—In the instant suit, where complainants sought to recover for ore unlawfully removed from their land, the jurisdiction of equity could not be maintained on the ground that proceedings at law would result in a multiplicity of suits, where two simple actions at law by the complainants against two sets of trespassers to recover the value of the ore respectively removed by them were all that would be necessary at law.

29. EQUITY—*Dismissal of Bill—Transfer of Cause to the Law Side of the Docket—Section 6084 of the Code of 1919.*—Section 6084 of the Code of 1919 does not confer so great a burden upon the trial courts in Virginia in respect to the reformation of the pleadings as is perhaps imposed upon the federal courts by section 1049 Barnes' Federal Code, Judicial Code 274a, 38 Stat. at L. 956. Section 6084 of the Code of 1919 was intended primarily for the benefit of plaintiffs and is mandatory upon the trial courts only to the extent of prohibiting them from dismissing a case "simply because it was brought on the wrong side of the court"—that is, where the only question was as to the forum.

30. EQUITY—*Dismissal of Bill—Transfer of Cause to the Law Side of the Docket—Section 6084 of the Code of 1919—Case at Bar.*—In the instant suit, the court did not dismiss the proceeding simply because it was brought on the wrong side of the court, but because after complainants had been offered and had rejected the privilege of amending their pleadings, they signified "their intention to stand by their bill, and not to amend the same," and made "no motion to remand this cause to the law side of the court as to any of the parties defendant."

*Held:* That the court need not under such circumstances compel complainants to accept the benefit of the statute. Its provisions may be waived, and the language of the decree justified the inference that it was so waived in this instance.

31. EQUITY—*Dismissal of Bill—Transfer of Cause to the Law Side of the Docket—Section 6084 of the Code of 1919.*—Where, under section 6084 of the Code of 1919, a transfer of the cause to the law side of the court with directions to reframe the pleadings would have little, if any, advantage over dismissing the suit without prejudice, it is not reversible error so to dismiss the suit.

Appeal from a decree of the Circuit Court of the city of Roanoke. Decree for defendants. Complainants appeal.

*Affirmed.*

The opinion states the case.

*W. B. Snidow* and *Chase & McCoy,* for the appellants.

*Jackson & Henson, Williams & Farrier* and *T. D. Savage,* for the appellees.

KELLY, P., delivered the opinion of the court.

This is a suit in equity for a discovery and an accounting. The decree from which this appeal was taken sustained a demurrer and dismissed the bill.

The appellants, hereinafter designated as the complainants, are the heirs at law of one Davis Byrnes, and as such inherited his title to a tract of land containing 177 acres. This land lay within the boundaries of a larger tract which had been sold by the Camp Manufacturing Company to one B. T. Johnson, Jr. There was a valuable deposit of manganese ore on the 177 acres, and early in the year 1918 the complainants, through their agent, J. R. Miller, began to mine and remove the ore therefrom. Thereupon, Johnson brought an injunction suit against Miller, and in the course of that suit all the Byrnes heirs were made parties, and a final decree was rendered therein on

April 1, 1919, whereby it was adjudged that the Byrnes heirs had a superior title as to 86.8 acres of the land in controversy between them and Johnson.

It is necessary, in order that there may be any approach to a clear and satisfactory presentation and disposition of the question arising upon this appeal, to set forth somewhat at length the allegations and prayer of the very voluminous bill which has been filed in the cause. After stating the facts above recited, the bill makes, *inter alia*, the following allegations:

(a) That ninety per cent. of the manganese deposit is or was on the 86.8 acres adjudged as aforesaid to be the property of the complainants;

(b) That during the pendency of the above mentioned injunction suit, and prior and subsequent thereto, B. T. Johnson, Jr., and the parties hereinafter named claiming under him, mined and removed manganese from the 86.8 acres;

(c) That on April 23, 1918, Johnson entered into a written contract with one Ernest S. Suffern, granting the latter the right to mine and remove the minerals from the boundary acquired by Johnson from the Camp Manufacturing Company (which included the 86.8 acres subsequently adjudged to the complainants);

(d) That by contract of June 10, 1918, Suffern sold and assigned to one Ottomar Stange all the rights and interest in the minerals acquired by him under the contract with Johnson, and that Stange shortly afterwards transferred the rights and interest thus acquired by him to a Virginia corporation known as Stange Mining Company, Incorporated, the charter for which was procured June 29, 1918, by Stange and wife and one Bonewell, through which corporation Stange and wife proceeded to carry on mining operations on the premises;

39

(e) That a large part of the money received by Johnson, Suffern and Stange from manganese mined and sold from the 86.8 acres was paid to the Camp Manufacturing Company as part of the purchase money due to that company from Johnson for the larger boundary acquired from it by him as aforesaid, and that the company knew at the time of such payments to it that some of the money was derived from the sale of manganese from the 86.8 acres, but did not know whether all or only a part thereof came from proceeds of manganese mined from complainants' land;

(f) That there has been mined from complainants' 86.8 acres "some 100 railroad cars or more of high grade manganese * * by the said B. T. Johnson, Jr., and by those claiming under him * * but complainants are unable to ascertain or state the exact number of said cars or the number of tons of manganese shipped, but they are informed that each of said cars of manganese were loaded with from forty to fifty tons of high grade manganese all taken from the said land, and that this manganese was sold by the said Johnson and others at various prices, ranging from probably as low as fifty dollars per ton to as high as one hundred and twenty dollars per ton; and that said Johnson and others have received from the said manganese sold off of the said Byrnes land * * from two to three hundred thousand dollars, but your complainants are unable to ascertain or here state how much has been received by the defendants to this suit for said manganese shipped from said land and sold by said defendants;"

(g) That "the various transactions between the Camp Manufacturing Company and the other defendants to this suit have been largely conducted in the

name of the defendant, B. T. Johnson, Jr., who is insolvent, but the said defendants have all shared with him the proceeds of the sale of said manganese; therefore, complainants charge that all of the defendants are jointly and each of them are severally liable to complainants for the full amount received by them and by each of them and all of them for said manganese, and that they and each of them are jointly and severally liable to complainants for the full value of all of the said manganese mined and removed from complainants' said land;"

(h) That Martin Williams, M. P. Farrier and H. W. Hale are each severally personally interested with B. T. Johnson, Jr., and the other defendants in the mining, removal and sale of said manganese and have each received a part of the proceeds, but complainants are unable to ascertain and allege just what amount they have received or what their interests are, and they therefore call upon the said Williams, Farrier and Hale to make disclosure as to their interest in the mining operations and the amount received by them;

(i) That the defendants, both before and after the decree of April 1, 1919, in the injunction suit, have mingled the ore taken from the 86.8 acres with ore from outside of that land, and probably have no means at this time of showing just how much manganese mined and shipped by them came from complainants' land, but that at least 95 per cent. of defendants' total shipments came from the 86.8 acres;

(j) That Stange and wife acquired a controlling interest in the stock of the Bland County Lumber Company, which owns or claims a tramroad over which certain of the manganese was hauled from the mine to the railroad, and that this company received from Johnson and other defendants large sums of

money arising from the proceeds of the manganese for transporting the same and also for improving its tramroad, but complainants do not know the amount of such sums of money, or how, or when paid;

(k) That all the ore shipped by defendants from the territory in which complainants' land is situated moved over the New River and Holston Railroad and thence over the Norfolk and Western Railroad, but that complainants have been unable to ascertain to whom or when the ore was shipped, or the number of tons shipped, because both railroads, pursuant to "provisions of a federal statute" refused to furnish the information;

(1) That complainants are unable to ascertain and allege "just how much manganese has been mined, shipped and sold by each of the several defendants * * * from the Byrnes tract of land * * * or the price received, or where, when and to whom said manganese was shipped or sold, and at what price, and what part of the proceeds * * * have been paid to Camp Manufacturing Company * * * and all of the defendants hereinafter named are also called upon to disclose and answer fully in regard thereto;"

(m) That "great difficulties will attend the prosecution by complainants of an action at law for their claim for the manganese removed" in ascertaining the number of tons, the value thereof, the amounts received therefor, etc., and that complainants have no means of proving these facts except by a discovery from defendants.

In addition to certain formal parties not necessary to mention in this connection, the defendants named in the bill are Stange Mining Company, Ottomar Stange, B. T. Johnson, Jr., Camp Manufacturing

Company, Martin Williams, M. P. Farrier, H. W. Hale and Bland County Lumber Company. It is explained that complainants do not make Ernest S. Suffern a party because he is a nonresident and has no property in this State.

The bill prays for a full disclosure from the defendants, the particulars of this prayer being hereinafter more fully referred to; and for an account of and a recovery against the defendants for the manganese mined and removed by them; and for general relief.

Demurrers were interposed by the defendants, and the material part of the decree now under review was as follows:

"On consideration whereof, the court being of the opinion that said demurrers are well founded, it is adjudged, ordered and decreed that said demurrers be, and are hereby sustained, with leave to amend if the plaintiffs be so advised, and the plaintiffs signifying their intention to stand by their bill, and not to amend same, and making no motion to remand this case to the law side of the court as to any of the parties defendant, it is adjudged, ordered and decreed that the plaintiffs' bill be dismissed and that the defendants recover of the plaintiffs the costs of this suit."

It is insisted by the complainants that the bill presents four distinct grounds, any one of which would be sufficient to support the jurisdiction in equity, namely, (1) Discovery, (2) Accounting, (3) Subrogation, and (4) The prevention of a multiplicity of suits. We shall consider these grounds in the order named.

[1-3] 1. This is not a pure bill of discovery. It seeks other relief. Not only is this true, but, unless some one or more of the remaining three grounds of equitable relief invoked by the complainants can be sustained, the bill is one seeking by the prayer for discovery to

transfer to a court of chancery jurisdiction over a purely legal demand—*i. e.*, a demand for the value of ore unlawfully taken from the land. To accomplish such a transfer of jurisdiction, a complainant must allege facts showing that he could not recover at all without the discovery. In addition to the requisite allegations in this respect, the plaintiff must make affidavit to the bill, and no such affidavit appears in this case, but this point is not raised before us by the demurrer or in argument, and we pass it without further comment.

In *Larkey* v. *Gardner*, 105 Va. 718, 720, 54 S. E. 886, 887, this court said: "In a pure bill of discovery it is not necessary to allege that only by discovery can the plaintiff sustain his demand. In such a case full relief of equity is not asked, but only its aid to make the applicant stronger in a court of law. But where the complainant asks a court of equity for both discovery and relief, and his demand is proper for the law court, and he seeks to transfer it to a court of chancery, he must show that only by discovery can he recover. He must allege that the facts concerning which a disclosure is sought are material, and that he has no means of proving those facts by the testimony of witnesses or by any other kind of evidence used in courts of law; that the only mode of establishing them is by compelling the defendant to make disclosure, and, therefore, that a discovery by suit in equity is indispensable. Unless such averments are required it is obvious that the boundaries between the chancery and common law courts would be broken down, and that chancellors would find themselves, under a colorable disguise, changing the forum of litigation, and assuming the settlement of controversies belonging exclusively to the common law courts."

In *Prewett* v. *Citizens' National Bank*, 66 W. Va. 184,

66 S. E. 231, 135 Am. St. Rep. 1019, the West Virginia Supreme Court said: "If his bill had prayed only discovery in aid of his defense in the action at law, the rule by which to test the sufficiency of the allegations thereof is very liberal, and we might well sustain it; but he prayed both relief and discovery. In order to sustain such a bill, he must comply with strict and rigid requirements. He must show that the evidence he seeks to obtain by his discovery is not only relevant, material and beneficial, but also absolutely indispensable to his defense and impossible of acquisition in any other way. *Thompson* v. *Whittaker Iron Works*, 41 W. Va. 574, 580, 23 S. E. 795; *Dudley* v. *Niswander & Co.*, 65 W. Va. 461, 64 S. E. 745; *Armstrong* v. *Huntons*, 1 Rob. (40 Va.) 323; Hogg's Eq. Pro., 164. The reason for this distinction is that, in the case of a bill for discovery only, the object is merely to obtain evidence for use in the trial of the action at law, while, in a bill for both discovery and relief, the purpose is much broader; the objects being to elicit evidence, and also to transfer the case from the legal to the equitable forum. It is so well marked and defined by the decisions that no further discussion of it is necessary." See also to the same effect Lile's Eq. Pl. & Pr. (2d ed.), sec. 150, and authorities cited there.

[4, 5] The foundation of the complainants' demand in this case is a trespass on real estate. For this trespass they could elect among several remedies at law. They could bring an action for damage to the land, or they could waive this damage and bring an action of detinue or trover for the ore or for its value. *Wood* v. *Weaver*, 121 Va. 250, 258, 92 S. E. 1001. The allegations in the bill as to the discovery sought do not measure up to the requirements for a transfer of this legal demand to the equity forum. There are, to be

sure, certain general allegations to the effect that the complainants are dependent upon the disclosures called for in order to establish their claim. But these are mere conclusions of law which are negatived by the particular facts alleged in the bill, as will more clearly appear upon an examination of the prayer for discovery. The several disclosures prayed for are as follows:

[6, 7] "(a) The number of railroad cars of manganese shipped from Flat Top mountain in Bland county, Virginia, over the New River and Holston Railroad, and the date each car was shipped, together with the car number and to whom shipped, and the number of tons of manganese contained in each car."

All the information here demanded would be readily available in an action at law. The defendant shippers themselves are competent witnesses and may be compelled to testify for complainants; and sections 6236 and 6237 of the Code of 1919 (sections 3370 and 3371, Code of 1887) provide a simple and adequate method whereby, upon proper affidavit or interrogatories, these defendant shippers may be required to furnish in detail all such information, and all their books and writings relevant thereto.

[8] In Lile's Equity Pleading & Practice (2d ed.), section 152, the author says: "Bills of discovery are now, with us, in large measure, superseded in practice by two statutory provisions, one allowing *a court of law* to compel a discovery on oath, in answer to interrogatories filed, where it would be compelled upon a bill of discovery, if the interrogatories have not been unreasonably delayed; and the other declaring *parties to suits competent to give evidence* on their own behalf, and to be competent and compellable to attend and give evidence on behalf of any other party to the proceeding."

And, to like effect, in Burks' Notes on Equity Procedure, page 39, it is said: "Now that the defendants are competent witnesses and may be examined by the complainant on any matter involved in the litigation, it is very rare that a defendant is called upon for relief of this kind, as the complainant has ample remedy by sections 3370 and 3371 of the Code." (Sections 6236 and 6237, Code 1919.)

[9, 10] It is true that section 6238 of the Code (section 3372, Code of 1887) provides that "the two preceding sections shall not preclude a person, who does not file such interrogatories or affidavit, from exhibiting his bill in chancery for a discovery, as he might have done if the said sections had not been enacted." But this provision has no effect upon the rule already pointed out that where, as here, the disclosure is sought for the enforcement of a purely legal demand the discovery must be essential to the plaintiff's case. The statutes referred to do not abolish the relief in pure bills of discovery, or in bills for discovery in aid of the enforcement of an equitable right; but it would seem that they do have the effect of eliminating this remedy "in mixed bills of discovery, when the jurisdiction at law is sought to be transferred to a court of equity, on the sole ground that discovery in equity is necessary." *Johnson* v. *Mundy*, 123 Va. 730, 744, 97 S. E. 564, 569. At any rate, if the statutes in question do not go to the full extent here suggested, it is clear that they reduce to a minimum the cases in which a discovery in equity may be availed of in transferring to that forum jurisdiction of a legal cause of action. The cases must be rare indeed, if any, in which, under the broad provisions of our present statutes, a plaintiff may not obtain as full disclosure in aid of his legal cause of action as he could obtain

by a bill of discovery. If there be such exceptional cases, this is not one of them.

[11] The foregoing considerations are conclusive against the right of discovery in this case, but a further equally conclusive answer to the complainants' prayer for disclosure as to shipments of ore is that the information sought may be obtained by summoning the agents of the railroad company to testify. It is conceded that the federal statute referred to in the bill, and pursuant to which the railroad company refused to furnish the information, is found in U. S. Compiled Statutes 1918, page 1362, section 8583, subsection 6. That statute contains this express proviso: "That nothing in this act shall be construed to prevent the giving of such information in response to any legal process under authority of any State or federal court."

The complainants were not dependent upon a discovery in equity for proof of the shipments from the mine, and it follows that they cannot sustain the jurisdiction in equity upon that ground.

[12, 13] The next disclosure prayed for is this: "(b) The price for each of these cars of manganese removed, giving date of payment, the amount paid, and by whom and to whom paid."

The prices received by the defendants are not material. The complainants are not entitled, under the averments in the bill, to recover the purchase price of the ore as a finished product. This would be the measure of damages if the defendants had been wilful trespassers, but they cannot be so regarded. The measure of damage in this case is the value of the ore in place, or what may be termed its royalty value. *Wood* v. *Weaver,* 121 Va. 250, 258; 92 S. E. 1001; 38 Cyc. 1133. The determination of such value would not be materially aided by the information sought in this part of the prayer.

[14, 15] It is true, as held in *Wood* v. *Weaver, supra,* that "every trespass is *prima facie* willful, and the trespass being conceded or proven, the burden of proof is on the defendant, unless it appears from the evidence of the plaintiff, to show that the trespass was not willful." But in this case the willfulness of the defendants' conduct is negatived by the allegations of the bill. Johnson and those claiming under him were in good faith asserting title to the whole of the 177 acres, and actually prevailed in that claim as to about one-half of the land. There is an allegation in the bill that the Stange Mining Company, and Ottomar Stange and others interested with him, continued to mine and remove ore from the premises after the final decree had been entered in the injunction suit of Johnson against Miller; but Stange and his associates were not parties to that suit, and the bill in the present case is not clear enough in its allegations to warrant the holding that they knew of that decree before they quit mining. It seems (from other allegations in the bill) that they desisted as soon as complaint was made to their counsel and they were advised to cease their operations.

But if it be conceded that the complainants were entitled, in addition to the amount of the tonnage shipped, to know and prove the prices received therefor, they could have required the defendants to give that information at law as easily and completely as in equity, in the manner hereinbefore pointed out.

[16] A further prayer for discovery is as follows: "(c) The amount paid by the defendants or any of them to the said Bland County Lumber Company, Incorporated, for transporting and hauling manganese from the mines to the railroad at First Ford, with the date of each payment, and also a full statement of all

moneys paid by any of the defendants in the construction, extension or improvement of the railroad from said mines to said First Ford."

This information is wholly immaterial to any purpose of this suit. The prayer is not confined to money received from sales of manganese and paid to the lumber company, but if it were, the amount so paid would have no bearing upon the right of the complainants to recover nor upon the proper amount of such recovery. Moreover, if the disclosure here demanded were material, the facts sought to be elicited by it could be obtained at law from the defendants and from the agents of the lumber company as witnesses. No liability on that company is alleged, and discovery can not be exacted of a mere witness, as will hereinafter be more particularly pointed out.

[17] The remaining disclosures called for in the prayer of the bill are as follows: "(d) The date and amounts paid by the said B. T. Johnson, Jr., and each and all of the other defendants in this suit, to the said Camp Manufacturing Company on the purchase price of the said large boundary of land * * *; and, (e) how much, if anything, is still due and owing from the said Johnson or any of the other defendants to this suit to the said Camp Manufacturing Company on the said purchase price of the said large boundary of land and upon the said deed of trust (securing part of the purchase money) dated the 8th day of October, 1917, from the said Johnson to the said P. R. Camp and Martin Williams, trustees" (in said deed of trust).

We have been unable, upon the most liberal view of the allegations of the bill from the standpoint of the complainants, to perceive any reasons entitling them to the disclosures sought to be elicited by this prayer. It may be noted, in the first place, that, as to pay-

ments which may have already been made to the Camp
Manufacturing Company, the prayer for discovery is
not limited to moneys derived from the sale of manga-
nese from complainants' lands, but is altogether general.
But this aside, none of the disclosures here sought are
pertinent to the establishment of the complainants'
alleged cause of action.   Payments already made and
amounts yet due to Camp Manufacturing Company
could have no relationship to the legal demand except
as showing the beneficial interest of Johnson in the
land purchased by him from the company, and this
would only become material after the demand had
been reduced to a judgment and its collection was
being sought.   If, however, the information in question
were now pertinent, it could as readily be obtained
from the defendants as witnesses in an action at law as
by a discovery in equity.   This proposition is too plain
for argument, and, for the reasons and upon the
authorities already referred to, defeats the right of
complainants to compel the disclosures in the equity
forum.

[18]  Furthermore, so far as the Camp Manufacturing
Company is concerned, there is another conclusive
reason why the discovery must be denied.   Except as
to the alleged right of subrogation, which, as we shall
see, does not exist, there is no theory or contention in
the case upon which to base any relief as against this
company.   The sole object of the discovery as to it,
therefore, is to obtain evidence from a stranger to
the controversy, and it is well settled that a bill of
discovery will not lie against a mere witness.   *Hurri-
cane Tel. Co.* v. *Mohler*, 51 W. Va. 1, 41 S. E. 421;
1 Pom. Eq. Jurisp. 2nd Ed. 199; 6 Encyc. Pl. & Pr.
761; Story's Eq. Jurisp. sec. 1489.

It follows from the foregoing discussion, the dis-

covery in equity must be denied unless the bill can be maintained upon some of the independent equitable grounds relied upon by the complainants. These will now be considered.

[19, 20] (2) With the exception of the prayer for general relief, the only prayer in the bill not already set out is the following:

"That an account be taken in this cause and that it be ascertained the amount and value of all the manganese heretofore mined and removed from the said lands owned by the complainants, and to whom the same was sold, and when sold and the price received for same, including interest from the date the said manganese was mined and removed, and that they may have judgment against the said defendants therefor."

It is claimed that the facts alleged in the bill, followed by this prayer for an account, are sufficient to give equity jurisdiction upon the ground of accounting. We do not think so. As already pointed out, the complainants have not shown themselves entitled to prove, as tending to establish their legal demand, the prices for which the ore was sold, but must be confined to proof of the amount removed and its value before the severance was effected. Even if the prices received for the finished product were material, the account would be a very simple one with the items all on one side. No fiduciary relationship existed between the parties, and no equitable interest or estate was involved. Many authorities are cited by counsel for complainants showing the comprehensiveness of the jurisdiction in equity in matters of accounting, and the readiness of the equity courts to assume jurisdiction on that ground. We shall not attempt any review of these authorities. They fully sustain the general proposi-

tions relied on, but none of them go far enough to
warrant an assumption of the jurisdiction upon so
simple an account as is here involved, unaffected by
difficulties less troublesome in equity than at law, and
unaccompanied by other equitable grounds.   This con-
clusion is clearly supported by the opinion delivered by
Judge Keith in the case of *Oglesby & Co. v. Ould & Co.*,
117 Va. 546, 85 S. E. 475, relied upon by counsel for
complainants.   The jurisdiction in that case was sus-
tained on the ground that the account was long and
complicated, and that the remedy at law was not as
full, adequate and complete as was afforded in equity.
Judge Keith reviewed the authorities on the subject
at length, and then stated the conclusions of the court
in terms which, by necessary inference, show that the
account involved in the instant case is not such as to
authorize a court of equity, even under the wide dis-
cretion belonging to it in matters of account, to assume
jurisdiction.   The pertinent language of the opinion
in the case cited is this:   "The principle we have under-
taken to illustrate is not that the court of law has not
jurisdiction in such a case to afford a remedy, but that
the remedy afforded at law is not as full, adequate and
complete as that given in equity.   The text-writers
and adjudicated cases which we have examined show
how wide is the scope of equity jurisdiction in such
cases, and while we have found none precisely in point,
all we think tend to illustrate the general proposition.
Whether the authorities cited refer to mutual accounts,
to long and intricate accounts, to repeated and aggra-
vated trespass, or to the investigation of a contract
embracing a multitude of terms, all converge upon and
illustrate the essential proposition that a court of
equity will interpose, even in the class of cases where
courts of law have concurrent jurisdiction, and with-

out the existence of a specific ground of equity, whenever it appears that the remedy at law is less adequate than that in equity to do full and complete justice between the parties; and it, therefore, follows that each case must be determined upon its own merits. The usual course of the administration of justice is not lightly to be diverted from courts of law, where as a rule it rightfully belongs, but whenever it shall clearly appear that the remedy at law is inadequate to do justice between the parties, the jurisdiction of a court of equity may be invoked.

"It is to be regretted that the bill and exhibits filed with it in this case are so voluminous as to render it undesirable to report them in full. If it were done there could be little room for doubt that the case before us is one for the exercise of equitable jurisdiction in order to do justice between the parties."

The bill in *Oglesby & Co.* v. *Ould & Co.*, showed that the case was "one for the exercise of equitable jurisdiction in order to do justice between the parties," whereas in the instant case the bill, though long and involved in its allegations, shows upon analysis just the opposite situation.

[21] There is no relationship of parties in this case upon which to base what is known as a true bill of account, and no contention is made that the suit belongs to that class. The demand is purely legal and no discovery is necessary. No mutual or complex account is involved. No other equitable ground, incidental to the main relief sought, exists to give color to the jurisdiction. Under these circumstances, it may be safely said that the authorities uniformly deny the right to sue on the account in equity. Lile's Notes on Equity Jurisp. (1921) pp. 264-271; *Oglesby & Co.* v. *Ould & Co.*, *supra; Goddin* v. *Bland & Bro.*, 87 Va.

706, 709, 13 S. E. 145, 24 Am. St. Rep. 678; *Poage* v. *Wilson*, 2 Leigh (29 Va.) 490; 3 Pom. Eq. Jurisp. sec. 1421.

This conclusion is not affected by the large number of defendants named in the bill, because no complexity in the account arises from that source. There is a general averment that the defendants are jointly and severally liable "for the full value of all the said manganese mined and removed from complainants' said land," but the facts specifically alleged demonstrate that this is not true, and that such liability as is shown against any of the defendants is several and not joint. Suffern is not made a party. The charges as to the interest of Williams, Farrier and Hale are altogether too vague and indefinite to afford a basis of liability against them, either at law or in equity. It must be assumed that these charges, the sufficiency of which was expressly challenged by written demurrer, could not be amplified, because the complainants declined the court's offer to allow them to amend the bill. No recovery is sought against the Camp Manufacturing Company or the Bland County Lumber Company. Stange and wife and the Stange Mining Company are treated by complainants as one and the same. The case is thus reduced to two separate legal causes of action for separate trespasses, one against B. T. Johnson, Jr., and the other against Stange and his associates, each independent of the other and properly and conveniently enforceable at law. The account against each of these defendants is a simple one, and could be readily presented in a jury trial.

(3) It is insisted in argument that the jurisdiction in equity ought to be maintained in order that complainants may be "subrogated to the rights of the Camp Manufacturing Company for any money re-

40

ceived from ore removed from their land by the defendants, which was paid to the Camp Manufacturing Company on the lien which it held on the large boundary of land for purchase money."

[22-24] No theory of subrogation is suggested either in the body of the bill or in the prayer for relief, nor do we find any basis for it in the facts alleged. The benevolent doctrine of subrogation has always been recognized and enforced in the courts of this State with marked favor and liberality, but there is nothing in this case calling for its application. This is at once apparent from a definition of the principle, which is thus formulated in Lile's Notes on Equity Jurisprudence (1921) p. 164: "Whenever one person is compelled to pay a debt or discharge an obligation *for which he is only secondarily liable, in person or in property*, and hence has *recourse over against the person or the property primarily liable*, for exoneration or contribution, a court of equity will subrogate the person thus secondarily liable to the position of the *creditor whom he has satisfied*, as to every *lien, preference or other special advantage* possessed by the latter at the time of such payment." While the principle does not rest in contract, either express or implied, it does depend upon a relationship of principal and surety, or of primary and secondary liability, or a situation in which one person is compelled, even though only for his own protection and without obligation to another, to pay some other person's debt. Stearns on Suretyship, p. 462, 463. No such relationship, so far as complainants are concerned, here exists, but merely one of debtor and creditor between the complainants and the trespassing defendants. The funds paid to Camp Manufacturing Company by Johnson and by Stange and Associates were in no sense trust funds. The

latter, not being wilful trespassers, were the owners of the proceeds of the ore. Whatever sums were paid to the Camp Manufacturing Company, whether from sales of ore or from other sources, increased the beneficial interest of Johnson in the larger boundary of land, and this interest will be subject to the lien of such judgment as complainants may obtain for the value of the ore taken by Johnson; but upon no principle justified by the facts alleged in this case can the complainants be subrogated; *pro tanto*, to the lien of the Camp Manufacturing Company for purchase money on the land.

(4) As the last reason for invoking jurisdiction in equity, it is claimed that this course is necessary to avoid a multiplicity of suits.

This ground of jurisdiction is not specifically referred to, or even very definitely suggested in the allegations of the bill, or in the prayer for relief. It may have come to the surface in this litigation in answer to one of the grounds of demurrer, namely, that the bill, if otherwise maintainable, was bad because it sought a recovery against several and separate tort feasors for separate and distinct demands.

[25] Many authorities are cited by counsel for the complainants which fully support the general doctrine that equity will assume jurisdiction to avoid a multiplicity of actions. We need not enter into a discussion of the several classes of cases to which this doctrine applies. With respect to most of them, the authorities are fairly uniform, and the doctrine involves little difficulty. If this case falls within any of the classes recognized by any of the authorities, it falls within the class as to which the authorities are in a state of great conflict and confusion. We refer to the fourth and last class described by Mr. Pomeroy, in the course of

his admirable and exhaustive treatment of the subject, as follows:

[25½] "4. Where the same party, A, has or claims to have some common right against a number of persons, the establishment of which would regularly require a separate action brought by him against each of these persons, or brought by each of them against him, and instead thereof he might procure the whole to be determined in one suit brought by himself against all the adverse claimants as codefendants." 1 Pom. Eq. Jurisp. 2nd Ed., sec. 245.

Mr. Pomeroy follows up this statement of his fourth class of cases in which the equitable jurisdiction may properly be invoked, by a critical review of the authorities, and by a learned discussion of the subject, in which, with characteristic earnestness and ability, he leads to a conclusion stated thus in section 269: "The jurisdiction, based upon the prevention of a multiplicity of suits, has long been extended to other cases of the third and fourth classes, which are not technically 'bills of peace,' but 'are analogous to' or 'within the principle of' such bills. Under the greatest diversity of circumstances, and the greatest variety of claims arising from unauthorized public acts, private tortious acts, invasions of property rights, violation of contract obligations, and notwithstanding the positive denial by some American courts, the weight of authority is simply overwhelming that the jurisdiction may and should be exercised, either on behalf of a numerous body of separate claimants against a single party, or on behalf of a single party against such a numerous body, although there is no 'common title,' nor 'community of right' or 'of interest in the subject matter' among these individuals, but where there is and because there is merely a community of interest among

them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body."

The fourth class recognized by Mr. Pomeroy was adopted, in its full literal scope, and his conclusions vindicated in all substantial particulars, by the Supreme Court of Alabama in the case of *Southern Steel Co.* v. *Hopkins, et al,* 157 Ala. 174, 47 So. 274, 20 L. R. A. (N. S.) 848, 131 Am. St. Rep. 20; but this case was later overruled in *Roanoke Guano Co.* v. *Saunders,* 173 Ala. 347, 56 So. 198, 35 L. R. A. (N. S.) 491, and the decision in the *Hopkins Case* was itself, on a subsequent appeal, reversed. See *So. Steel Co.* v. *Hopkins,* 174 Ala. 465, 57 So. Rep. 11, 40 L. R. A. (N. S.) 454, Ann. Cas. 1914B, 692. The trend of judicial decision is toward confining the jurisdiction within narrower limits than would be permitted by Mr. Pomeroy's view. See Lile's Notes on Equity Jurisprudence (1921) p. 256; 10 R. C. L. p. 284, sec. 29; Notes: 131 Am. St. Rep. 42; 40 L. R. A. (N. S.) 465; Ann. Cas. 1914B, 697.

[26] We do not find it necessary to do more than merely advert to this conflict between Mr. Pomeroy and many of the courts, because that conflict seems to be largely reconciled, so far as this case is concerned, by section 251½ of the 3rd Edition of Pomeroy's Equity Jurisprudence, wherein it is said that the equity suit must result in a simplification or consolidation of the issues; that if, after numerous parties are joined, there still remain separate issues to be tried between the several parties, nothing has been gained by the court of equity's assuming jurisdiction; and that in such a case, while the bill has only one number on the docket and calls itself a single proceeding, it is in reality

a bundle of separate suits, each of which is no doubt similar in character to the others, but rests nevertheless upon separate and distinct liabilities. Under this interpretation, even the liberal rule of jurisdiction contended for by Mr. Pomeroy would exclude the instant case.

[27, 28] It must be remembered, too, that while the particular number of actions which will support this ground of equity jurisdiction is not fixed, and depends upon the circumstances of each case (21 C. J. 75), the very foundation of the jurisdiction is the inadequacy of the legal remedy arising out of a *multiplicity* of actions. We have here a prospect of two simple actions at law by the complainants, one against B. T. Johnson, Jr., and the other against Stange and associates, to recover the value of the ore respectively removed by them for 86.8 acres of the original Byrnes land. We are aware of no authorities which would warrant us in declaring this to be the prospect of a multiplicity of suits.

[29] The demurrer to the bill was properly sustained.

(5) Finally, it is assigned as error that the court dismissed the bill instead of transferring it to the law side of the docket.

Section 6084 of the Code is as follows: "No case shall be dismissed simply because it was brought on the wrong side of the court, but whenever it shall appear that a plaintiff has proceeded at law when he should have proceeded in equity, or in equity when he should have proceeded at law, the court shall direct a transfer to the proper forum, and shall order such change in, or amendment of, the pleadings as may be necessary to conform them to the proper practice; and, without such direction, any party to the suit shall have the right, at any stage of the cause, to amend

his pleadings so as to obviate the objection that his suit or action was not brought on the right side of the court. After such amendment has been made, the case shall be placed by the clerk on the proper docket of the court and proceed and be determined upon such amended pleadings. The defendant shall be allowed a reasonable time after such transfer in which to prepare the case for trial."

This statute appeared for the first time in the Code of 1919. It was to some extent modeled after the act of Congress approved March 3, 1915 (Judicial Code 274a, 38 Stat. 956, Barnes' Federal Code, sec. 1049 [U. S. Comp. St. §1251a]), which was as follows: "That in case any of said courts shall find that a suit at law should have been brought in equity or a suit in equity should have been brought at law, the court shall order any amendments to the pleadings which may be necessary to conform them to the proper practice. Any party to the suit shall have the right, at any stage of the cause, to amend his pleadings so as to obviate the objection that his suit was not brought on the right side of the court. The cause shall proceed and be determined upon such amended pleadings. All testimony taken before such amendment, if preserved, shall stand as testimony in the cause with like effect as if the pleadings had been originally in the amended form."

[30] It will be observed that the revisors did not adopt the above section of the act of Congress in its entirety, and it was manifestly not their idea to place upon the trial courts in Virginia as great a burden in respect to the reformation of the pleadings as is perhaps imposed upon the federal courts by that act. Section 6084 of the Code, as we construe it, was intended primarily for the benefit of plaintiffs and is

mandatory upon the trial courts only to the extent of prohibiting them from dismissing a case "simply because it was brought on the wrong side of the court"—that is, where the only question was as to the forum. In this case the court did not dismiss the proceeding simply for that reason, but because after complainants had been offered and had rejected the privilege of amending their pleadings, they signified "their intention to stand by their bill, and not to amend the same," and made "no motion to remand this cause to the law side of the court as to any of the parties defendant." The court need not under such circumstances compel plaintiffs to accept the benefit of this statute. Its provisions may be so waived by parties entitled to invoke them as to preclude reliance upon it on appeal, and the language of the decree justifies the inference that it was so waived in this instance.

[31] Furthermore, it was clearly right to dismiss the suit as to all parties except Johnson and Stange and associates; and, since two separate actions must be brought against these parties, a transfer of the cause to the law side of the court with directions to reframe the pleadings would have little, if any, advantage over dismissing the suit without prejudice, which, in effect, was what the court did. In no just sense can it be said that the suit was dismissed "simply because it was brought on the wrong side of the court."

We find no error in the decree complained of, and it must be affirmed.

*Affirmed.*