Marjorie A. MULLINS, Appellant,

v.

**CLINCHFIELD COAL CORPORA-
TION, Appellee.**

No. 7046.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 14, 1955.

Decided Nov. 18, 1955.

A. G. Colley, Jr., and L. V. McFall, Charlottesville, Va., for appellant.

Wm. A Stuart, Abingdon, Va., and A. G. Lively, Lebanon, Va., for appellee.

Before SOPER and DOBIE, Circuit Judges, and THOMSEN, District Judge.

THOMSEN, District Judge.

Appellant, plaintiff below, is the owner of the mineral and mining rights in a tract of land known as the Upper Bond Tract in Wise County, Virginia. Appellee, defendant below, is the owner of the residuum of the title, and mines coal on neighboring tracts. The questions pre-

sented by this appeal are: (1) whether defendant was guilty of a willful trespass in excavating sites for a tipple and slack bin and in grading a sidecut for tramtracks on the Upper Bond tract, as a result of which some outcrop coal and other coal lying adjacent to the outcrop, together with a quantity of earth and stone, was pushed over the side of the slope by a bulldozer; and (2) whether plaintiff, as owner of the mineral rights, is entitled to any damages for such displacement, and if so, the measure thereof. The district judge allowed plaintiff damages for the coal displaced at its royalty value, 25¢ per ton. Plaintiff claims that she is entitled to the full market value of the coal without deduction for costs of extraction. On the other hand, defendant claims that the material displaced was "just soil", outcrop coal, unmineable and of no value, and not a part of plaintiff's mineral estate. Defendant, however, took no appeal from the order awarding plaintiff $1,363.50 damages.

In November, 1944, plaintiff purchased for $3,250.00 "all of the Coal, gas, oil and mineral rights" in the Upper Bond tract. The deed provided:

"It is expressly understood between the parties hereto that this conveyance deals only with the mineral rights, and that the title to the land or surface is to remain in the grantors, their heirs or assigns, grantee shall have the right to dig, mine, excavate, drill, prepare for market and remove or carry away the said coal, gas, oil and minerals without liability for damages to the surface or anything thereon, nor shall grantee be liable for damages for sinking of any water on said land; with right of ingress and egress for purposes of exercising their mining rights hereunder."

Defendant acquired the residue of the title to said tract in May, 1945, for $2,500.00. There is mineable coal on the tract sufficient to justify plaintiff in undertaking to mine the coal if she wishes to do so, but it is doubtful if such an operation would be profitable.

In October, 1945, defendant offered to purchase plaintiff's coal and mineral rights in the tract, but plaintiff did not wish to sell. In the summer of 1947 defendant began the construction of a tipple and other facilities on Upper Bond. Plaintiff at first indicated no objection, but tried to work out with defendant a lease of her interest in the tract. In February, 1948, plaintiff broke off these negotiations, told defendant that she planned to mine the Upper Bond coal herself and that her operations would require the entire surface of Upper Bond, and called upon defendant to remove therefrom within thirty days all its construction, sidings, machinery and materials. Defendant declined to comply, but offered to cooperate with plaintiff in her mining operations.

Up to February 16, 1948, defendant had spent $200,000 and committed an additional $700,000 on the tipple and other improvements on Upper Bond, including the grading of the tramtrack level. Defendant had also spent very substantial sums in opening a mine on adjacent land, to be served by the tipple. Since the institution of this suit in July, 1951, defendant has made the necessary excavations and erected a slack bin on Upper Bond at tramtrack level, near the tipple.

The district judge found that from and after February 16, 1948, plaintiff at no time had a bona fide present intention to mine the Upper Bond coal, and that from and after that date her intention and efforts were to force Clinchfield to settle her claim for a sum far in excess of the value of her interest in Upper Bond. On April 9, 1948, plaintiff wrote defendant that she had been informed by an attorney that she was "in position to demand a strong settlement. * * * The aggregate costs to you should not be computed in the terms of the value of my coal 'even if you were to destroy it', but to the costs to you of having the courts award me a verdict and compelling you to remove your improvements or pay an equal amount".

The district judge also found that defendant's improvements, operations and actions have not unreasonably restricted or prevented plaintiff from exercising her property rights on Upper Bond; that if and when plaintiff has a bona fide present intention to mine the Upper Bond coal, she is not unreasonably hindered or interfered with by defendant; and that at the time plaintiff acquired her title, the usual method of mining coal, known and accepted as common practice in Wise County, Virginia, was the method known as deep-mining. We adopt these findings.

The district judge found that defendant, in doing the grading and making the excavations for its improvements on Upper Bond, displaced 5,454 tons of outcrop coal and coal lying adjacent to the outcrop; that the royalty value of the coal was 25¢ per ton; and that defendant acted in good faith in displacing the 5,454 tons. "It believed in good faith that it was within its rights as owner of the surface estate in making the excavations, and further believed in good faith that the coal displaced had no market value." These findings are supported by substantial evidence and should not be disturbed.

Plaintiff originally claimed that defendant's improvements make it impossible for her to mine her coal, and prayed for a mandatory injunction requiring defendant to relocate or remove all its improvements, and for $500,000 damages. After taking 1,264 pages of testimony and examining more than 200 exhibits which were offered in evidence, the district judge, at the end of the whole case, concluded that plaintiff was not entitled to a mandatory injunction, nor to recover any punitive damages, nor to recover compensatory damages with respect to the coal remaining in place on Upper Bond, but was entitled to recover $1,363.50, the royalty value of 5,454 tons of coal displaced by defendant in constructing its improvements. The judge ruled specifically that defendant was not guilty of willful trespass in displacing the coal.

On this appeal plaintiff is not pressing for a mandatory injunction, and has raised only the question of the measure of damages applicable to the coal which was displaced by defendant. The Chesapeake & Ohio Railway Company was originally joined as a party defendant in the suit, but the court dismissed the case against it, and plaintiff has not appealed from that ruling.

The Supreme Court of Virginia and other courts have discussed the reciprocal rights and obligations of mineral owners on the one hand and of the owners of the residuum of the title or surface owners on the other; but it does not appear that the precise point involved on this appeal has ever been decided by any court.

Plaintiff concedes that a surface owner may have the right to remove some of a mineral owner's coal in the reasonable exercise of its surface rights, but contends that defendant did not have the right to remove any of plaintiff's coal in order that it might use the space occupied by such coal in hauling and processing coal mined by it on adjacent land. Plaintiff relies upon Clayborn v. Camilla Red Ash Coal Co., 128 Va. 383, 105 S. E. 117, 15 A.L.R. 946, a suit by a surface owner against a lessee of mineral rights to enjoin the lessee from using an underground haulway on the leased tract to haul coal which it had mined on an adjacent tract. The Supreme Court of Virginia held that this use of the underground haulway placed an additional and unlawful burden upon the estate of the surface owner, saying " * * * nothing but the coal and the right to remove it ought to be understood to pass by the deed". 128 Va. at page 397, 105 S. E. at page 122. The court quoted with approval from Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 25 A. 597, 18 L. R.A. 702, 34 Am.St.Rep. 645, as follows: " 'The grantee of the coal owns the coal, but nothing else, save the right of access to it and the right to take it away. Practically considered, the grant of the coal is the grant of a right to remove it. * * * ' ". 128 Va. at page 393, 105 S.

E. at page 120. To the same effect are Raven Red Ash Coal Co. v. Ball, 185 Va. 534, 39 S.E.2d 231, 167 A.L.R. 785, and Watts v. C. I. Johnson, etc., Real Estate Corp., 105 Va. 519, 54 S.E. 317. These cases give no support to plaintiff's position in this case.

The Supreme Court of Virginia has not yet decided whether such a deed as plaintiff received gives a right to strip mine coal, and if so, under what conditions and limitations. The question has been discussed in other states; see Commonwealth v. Fisher, 364 Pa. 422, 72 A.2d 568; West Virginia-Pittsburgh Coal Co. v. Strong, 129 W.Va. 832, 42 S. E.2d 46; Oresta v. Romano Bros., 137 W.Va. 633, 73 S.E.2d 622; and the Supreme Court of Virginia has held that the mineral owner is not limited to such appliances as were in existence when the grant was made but may keep pace with the progress of society and modern inventions. But for the reasons set out below, it is not necessary for us on this appeal to determine whether or not plaintiff has the right to strip mine coal on Upper Bond, and we intimate no opinion on that point.

The rights of a surface owner to use the land are discussed in a number of cases, e. g., Clinchfield Coal Corp. v. Compton, 148 Va. 437, 139 S.E. 308, 55 A.L.R. 1376; Oakwood Smokeless Coal Corp. v. Meadows, 184 Va. 168, 34 S.E.2d 392; Preston County Coke Co. v. Elkins Coal & Coke Co., 82 W.Va. 590, 96 S.E. 973; Chartiers Block Coal Co. v. Mellon, 152 Pa. 286, 25 A. 597, 18 L.R.A. 702; Imperial Elkhorn Coal Co. v. Webb, 190 Ky. 41, 225 S.W. 1077; 36 Am.Jur. 400, Mines and Minerals, sec. 174.

None of the cases discuss the question whether the surface owner is guilty of a trespass if he removes or displaces outcrop coal or other coal in the exercise of his surface rights, nor what damages, if any, he must pay the mineral owner for such removal or displacement. We hold that a displacement of outcrop or other coal in the *reasonable* exercise of surface or residual rights does not constitute a trespass, although the mineral owner is entitled to compensation based upon the value *in situ* of the coal displaced. In passing on the question of reasonableness the court should consider all of the circumstances surrounding the original conveyances, the nature of the land and of the use which the respective parties have made of it or bona fide contemplate making of it in the future, the nature, quality and location of the coal or carboniferous material displaced or removed, and the use which the surface owner made thereof.

However, it is not necessary for us to decide on this appeal whether defendant's exercise of its surface rights was reasonable or unreasonable, or whether it constituted a trespass, since, for the reasons stated below, we find: (1) that assuming it was a trespass, it was not willful, and (2) that the measure of damages for the displacement of the coal would be the same whether such displacement was caused by (a) a reasonable exercise of defendant's rights, or (b) an innocent trespass.

1. *The Question of Willfulness.* The leading Virginia case on this question is Wood v. Weaver, 121 Va. 250, 92 S.E. 1001, 1003, in which the court said:

"On the question as to when a trespass is willful, the decisions are almost innumerable. They develop, however, certain well settled conclusions. 'Willful,' in this connection, is not confined, in its meaning to the act of trespass itself, in the sense that such act itself is intentionally or knowingly done. In that sense every trespass would be willful. The legal meaning of the word 'willful' in this connection is a technical one, which the courts and text-writers have found it impossible to define in set terms which will fit every case. To be willful the act of trespass itself must be intentional, to be sure, for if done accidentally or by inadvertence or by mistake not induced by gross negligence, it will not be willful. (Citing cases.) * * * But a criminal intent is not essential, nor even a fraudulent

intent. The act need not rise above the degree of gross negligence of the property rights of others to constitute the trespass a willful trespass. (Citing cases.) * * *

"To be more specific, the trespass must be committed under a *bona fide* claim of right, or title, not induced by gross negligence in failure of the trespasser to ascertain the correct location of the property, or the title to it, otherwise it is willful; and, conversely, if it be in truth committed under such claim of right or title, not induced as aforesaid, it is not willful. (Citing cases.)"

See also French v. Stange Mining Co., 133 Va. 602, 114 S.E. 121, and Pan Coal Co. v. Garland Pocahontas Coal Co., 97 W.Va. 368, 125 S.E. 226, 232, where the court said: "* * * to be a willful trespasser one must not only intentionally commit the act of trespass, but must do so under such circumstances as would warrant the court or jury in finding that he did it in bad faith." The court cited many illustrative cases, including United States v. Homestake Mining Co., 8 Cir., 117 F. 481, 485, in which Judge Sanborn said:

"If either or both these presumptions make every trespasser a willful and intentional wrongdoer, because he is chargeable with knowledge of the law, then there never has been, and never can be, a trespasser through inadvertence or mistake, or one who violates the law in the honest belief that he is acting within his legal rights; and the rule that the damages caused by such a trespasser shall be limited to the value of the wood or timber in the trees or of the ore in its bed, which was announced in Bolles Wooden-Ware Co. v. United States, 106 U.S. [432], 433, 434, [1 S.Ct. 398] 27 L.Ed. 230, and which has been reiterated and applied in numerous cases since, is *functus officio,* and useless, because no class or party to which it is applicable can ever be. The truth is, however, that this rule, and every other rule which measures the damages caused by trespassers, does not call the righteous, but sinners, to restitution. None of these rules have any application to those who do not violate the law. Every trespasser breaks the law, and to every trespasser the maxim applies that every man knows the law. Notwithstanding all this, the law, in its wisdom, perceives the marked difference in the heinousness of the offenses of those who recklessly, or with actual intention to rob others of their rights, trespass upon their property, and of those who trespass by mistake, and with no evil purpose, no actual, willful intent to commit a wrong; and it declares that the former class shall pay to their victims the full value of the lumber or the ore they take at the time they sell or use it, while the latter class shall be relieved from liability upon restitution of the value of the timber in the trees or of the value of the ore in the mine."

■ In the case at bar Judge Barksdale made the following finding [128 F. Supp. 444]: "I find that Clinchfield in displacing the five thousand four hundred fifty-four (5,454) tons, acted in good faith. It believed in good faith that it was within its rights as owner of the surface estate in making the excavations, and further believed in good faith that the coal displaced had no market value." We agree with this finding. Even if the displacement of the coal be deemed a trespass, and not within the reasonable exercise of defendant's residual or surface rights, the trespass was not willful.

■ 2. *The Measure of Damages.* It is established law in Virginia and elsewhere that where the removal or displacement of the coal is done innocently and in good faith, compensatory damages only can be recovered, and that such damages should be based on the value of the coal in place, in other words, its royalty value. Douthat v. Chesapeake & Ohio Ry. Co., 182 Va. 811, 30 S.E.2d 578;

886

French v. Stange Mining Co., 133 Va. 602, 114 S.E. 121; Wood v. Weaver, 121 Va. 250, 92 S.E. 1001; Pan Coal Co. v. Garland Pocahontas Coal Co., 97 W.Va. 368, 125 S.E. 226; United States v. State of Wyoming, 331 U.S. 440, 67 S.Ct. 1319, 91 L.Ed. 1590, rehearing denied, 332 U.S. 787, 68 S.Ct. 37, 92 L.Ed. 370.

It is only where the trespass is willful that a higher measure of damages may be allowed. Wood v. Weaver, supra; French v. Stange Mining Co., supra; Pan Coal Co. v. Garland Pocahontas Coal Co., supra; United States v. State of Wyoming, supra; Pine River Logging & Improvement Co. v. United States, 186 U.S. 279, 22 S.Ct. 920, 46 L.Ed. 1164; Trustees of Dartmouth College v. International Paper Co., C.C., 132 F. 92; 4 Restatement of the Law of Torts, 663–664; 1 Am.Jur., Accession, secs. 25–26. The reason for this distinction was well stated by Judge Sanborn in the passage quoted above from United States v. Homestake Mining Co.

■ Since we have held that even if the displacement of the coal by defendant in the case at bar be deemed a trespass such trespass was not willful, it follows that plaintiff was entitled to no more than the value of the coal in place, which the district court awarded to her. If the displacement of the coal was within the reasonable exercise of defendant's rights and not a trespass at all, her damages could not be higher.

■ Defendant contended in the district court that the displaced outcrop coal was unmineable and had no value in place, but was really carboniferous material, so mixed with soil and other impurities that defendant was entitled to treat it as "just soil", in the same way that defendant treated the similar material on its side of the property line without any obligation to pay anything on the mineral. But the district judge ruled against defendant on this point, and defendant took no appeal; so defendant's point is not before us.

■ Plaintiff also complains because she was not allowed interest on the value of her coal computed from the dates when it was displaced by defendant. This was a matter in the discretion of the trial judge, and under all of the circumstances of the case, we do not think he abused his discretion. Code of Virginia 1950, § 8–223; Wolford v. Williams, 195 Va. 489, 78 S.E.2d 660; Jones v. Foster, 4 Cir., 70 F.2d 200, 201. Cf. Chesapeake & Ohio Ry. Co. v. Elk Refining Co., 4 Cir., 186 F.2d 30, 36 A.L.R. 2d 329, where the circumstances were quite different.

Affirmed.